Mr. Chief Justice SHARKEY
delivered the following opinion.
The principal question in this case is, does the judgment of af-firmance rendered by this Court, on appeal, against the principal and his sureties in the appeal bond, extinguish the original judgment and destroy the lien created by it, and substitute only a new lien from the date of the judgment of affirmance ?
To support the affirmative of this proposition, the counsel for appellants rely'mainly on the provisions of the 20th section of the Act relating to thexHigh Court of Errors and Appeals. How. & Hutch. *193 Dig. 535, which provides that a certified copy of the bond on appeal, or writ of error, shall be transmitted to the Court above, with the transcript of the record of the cause ; and in case the judgment or decree of the Court below shall be affirmed, or the appellant or plaintiff in error shall fail to prosecute the same to effect, the Supreme Court shall enter up judgment or decree against all the obligors in such bond, both principal and surety, for the debt, damages and costs, which may be adjudged to the appellee or defendant in error ; and it shall be the duty of the clerk of the Court below, on the certificate of the clerk of the Supreme Court, to issue execution thereon accordingly.”
By the forty-third section of the law relating to trial and judgment, How. & Hutch. Dig. 621, it is provided, that in all cases the property of the defendant shall be bound and liable to any judgment, from the time it is rendered. This act undoubtedly had reference more particularly to judgments of the Circuit Courts. Its object was, to secure the plaintiff who might recover judgment in the Circuit Court by making his judgment a lien.
The first thing which strikes the mind in considering these acts, is their respective dates. The first was passed in 1822, and the other in 1824. The judgment of the Supreme Court was not a lien at all until the act of 1824 made it so. We cannot, therefore, control the latter act by the former, but .the latter must have a controlling influence over the former. It cannot be defeated by the operation of the first act, when, but for the second, it could not have had such operation at all. If, then, it was the intention of the legislature to give the plaintiff a lien from the time he recovered a judgment in the Circuit Court, that lien cannot be defeated or qualified by a pre-existing law ; and if such be the necessary effect, then, on legal principles, it would follow that the first should be considered as so far repealed by implication. But I shall endeavor to show that the judgment of the Appellate Court, under the twentieth section, does not destroy the original lien of the first judgment.
A judgment is but a security for a debt, and the payment of the debt is the object of the lien. By law the property of the defendant is bound and liable to satisfy -the judgment; that is, there is a tie, or claim upon it, which remains until the judgment is satisfied. *194 The lien arises by mere operation of law ; it is not capable of being enforced as an independent lien, but it is merely passive, and when the execution is levied, it is not enforcing the lien, but the judgment, the effect of the law being that the property shall remain liable to the satisfaction of the debt. And even if there he a new judgment, this does not necessarily destroy the lien which the law has given, for it is competent for the law to keep the lien in existence, although a new judgment be predicated on the first. The object of the law is not accomplished until the debt is paid.
The commission of the Appellate Court, is to review the legality of the proceedings of the Court below, and if the trial and proceedings have been according to legal principles, then the Appellate Court must affirm the judgment. The law has annexed certain incidents to this affirmation, but these do not essentially change the character of the judgment. Its legal effect is to declare that what has been done, was done rightly ; to declare it to be a legal judgment. The damages and judgment on the bond are but incidents which the law requires the Appellate Court to attach to an already valid existing judgment. They are but cumulative to that which pre-existed. To me it seems a contradiction that the judgment of affirmance, the act .which declares that the judgment was regular,' and constituted a perfect lien from the time it was rendered in the Circuit Court, should be considered as the act which destroys the validity of the lien. Affirm means to ratify or confirm, and not to destroy. Still it is said, this must be the effect, because the original judgment is satisfied, or merged or extinguished by the new judgment. Now Pmaintain that the first judgment is neither satisfied, merged, nor extinguished, by the new judgment of affirmance. Satisfaction is a technical term, and in its application to judgments, it means the payment of the money due by the judgment, which payment must be entered of record, and nothing but this is a legal satisfaction of a judgment. 2 Tidd, 981. It is true, that by payment in pais the defendant may lay the foundation on which the Court will direct satisfaction to be entered, or a levy on sufficient property is held to be a satisfaction. So it was held in Mumford v. Stocker, 1 Cowen, 178, that a judgment recovered on a judgment was no satisfaction or extinguishment of the first judgment, *195 both debts being of equal degree, and the Court accordingly refused to have satisfaction entered, holding also that no satisfaction could be entered until there was actual satisfaction. Now I presume that the interest on the first judgment was embraced in the second, and to this extent at least it was a new judgment.
Nor is the first judgment merged in the second, for both judgments are of equal dignity, and no merger can take place unless one right be inferior to the other. • 4 Jacob’s Law Die. 279. Nor is it extinguished, which, as a legal phrase, means the annihilation or extinction of a right, by its being consolidated with a greater or more extensive right. In its application to debts, an extinguishment takes place only when the original debt is destroyed, as if a feme sole marry her debtor, or if a debtor be made executor at the Common Law, &c. So, taking a security of a higher nature, extinguishes the first security ; but a security of an inferior or equal degree does not extinguish the first security. Cro. Eliz. 304, 716, 727 ; Cro. Car. 86 ; 1 Cowen, 178. Then if the first judgment is neither satisfied, merged, or extinguished by the second, how can the lien be destroyed ? These are all technical terms, but their meaning falls short of the object. If we get clear of the lien of the judgment, we must do so by legal means, and I find nothing which destroys the judgment. It may be suspended, but this will not destroy the lien ; for instance, the plaintiff who gives a stay, suspends his judgment, but does not lose his lien. So is a judgment suspended by injunction, but the lien is not lost. Knowing there is no way by which to get rid of it, I conclude, that it is a judgment still, at least, for all the purposes of the lien.
I think the English practice accords with this view. When a case is taken by writ of error from an inferior Court to the Court of King’s Bench, and affirmed, that Court gives a new judgment, which includes costs, and by the 3 Hen. 7, c. 10, and 19 Hen. 7 c. 20, damages also, and the record being there, execution emanates from that Court; 2 Tidd’s Frac. 11, 26, 27, 28, &c. The only difference between the judgment of that Court and this, is the rendering of judgment against the sureties in the writ of error bond, which in England is obtained by a different remedy ; but including costs and damages, makes it as much a new judgment, as if it were,' *196 rendered against the sureties. The judgment corresponds in form to our judgments. It recites, that the record being examined, and no error being found, it is considered that the judgment be affirmed, and that the defendant in error also recover his costs and damages, which are assessed by the Court, and constitute part of the recovery. When the execution issues, it recites the first judgment, the removal of the record and the affirmance, and commands the sheriff to make the aggregate sum, including the amount of costs and damages, and it issues to the county in which the venue was laid in the original suit. 2 Sellon’s Practice, 220, 387, 419. Why does it recite the original judgment, if that judgment has lost its effect, and why issue to the county of venue ?
In England an action of dpbt may be brought on a judgment pending error, and a second judgment recovered, which the Court will not set aside, but proceedings may be stayed until the determination of the writ of error. 4 Burrow, 24, 54; 3 Term Rep. 643. The conclusion is, that if the first judgment should be affirmed, then the plaintiff may proceed on the second. How could this be if the judgment of affirmance destroyed the first judgment ? By sweeping away the foundation, the superstructure would fall. The latter judgment would of course depend upon the first. Where there are dependent judgments, the reversal of the first destroys the second. 2 Tidd. 1128. Now I apprehend, that the same result would follow if the first judgment were annulled or destroyed by any other means. From these authorities it is plain, that a judgment has all its validity pending error ; but on the supposition that the judgment of this Court destroys the effect of the first judgment, this could not be the case here. The mere suing out of a writ of error would destroy the judgment, for the Appellate Court must either reverse or affirm, and in either case the result would be to destroy the lien the moment a writ of error and supersedeas should be taken. In that case the plaintiff below could not proceed on his judgment, and when he obtained a new judgment, that could only operate from the date of its rendition.
By the statute of Westminster 2, c. 18, the judgment binds half the freehold from the rendition, in case the plaintiff should sue out an elegit; and yet, by bringing an action of debt on the first judgment, *197 it is no waiver of the lien. 1 Salk. 80. A writ of error is like a new action, and according to this authority, it does not destroy the lien in England ; yet, according to the argument of appellant’s counsel, a writ of error would here destroy it. This is easily illustrated. A. has recovered judgment in the Circuit Court against B. B. sues out his writ of error with supersedeas, and then sells his property. It is plain he may do so, because if the Appellate Court affirm, the original lien is gone, and the new one is now defeated by a previous sale. Now, if a plaintiff in England does not destroy his lien by a new suit, for much stronger reasons, the defendant here should not be allowed to destroy it by a new suit, for in general no one can be deprived of his lien without his consent. The case cited above from 1 Salkeld, is a very strong authority. It was a contest between liens by mortgages and judgments. On one of the judgments no execution had been issued for a year and a day. It could not, therefore, be enforced by execution, but a new action was the only remedy. Still, although dormant, it was held to be' a lien. The action on it must have resulted in a new judgment, and when the execution was sued out, it could only be on the new judgment, and yet we see the lien of the original judgment was retained, although it could not be enforced, and indeed never could be enforced on that judgment. The objection was made, that the plaintiff could only extend the land, which the party had at the date of the latter judgment, but it was overruled. The case furnishes a complete answer to the argument, that the lien of the first judgment cannot be enforced, and that there cannot be a lien which cannot be^enforced. It shows that the lien begins with the first judgment, and continues, although there be a new judgment ; that the ■ entering of a new judgment does not destroy the binding power of the old one. It is no doubt true, that a lien without the means, either present or future, to enforce it, cannot exist. But the writ of error merely suspends the remedy. On the principle assumed in argument, it is-an easy matter to show that a defendant may prevent any judgment from operating as a lien. A defendant may either appeal or take a writ of error, and the judgment of the Appellate Court is the same. Now, suppose the moment a judgment is rendered, the defendant appeals, at what period of time could such a lien be enforced ? At none. *198 The appeal is granted the instant the judgment is rendered. There is no time for an execution, for that cannot issue until after the adjournment of Court. The security given on taking an appeal or writ of error, does not compensate the plaintiff for his lien. It is less certain, less effectual, and the law has nowhere directed that the lien shall be surrendered for this security. To give it this effect, by consequence drawn from the provisions of a former law, is to a certain extent to substitute a precarious security for that which the law designed as certain and safe.
The argument mainly relied on is the analogy which the judgment of affirmance bears to the statutory judgment which accrues on the forfeiture of a forthcoming bond, it being insisted that in the latter case, as the judgment is “satisfied,” so it must be in the first. It is now well settled, that the forfeiture of a forthcoming bond has the effect of a judgment, and is a satisfaction of the original judgment. I shall not question these decisions. In the result they are no doubt correct, but it may be questionable whether the term “satisfaction,” was properly applied in those cases. I have already shown what is meant in technical language by this term. One judgment neither satisfies, merges, or extinguishes the judgment on which it is founded, according to the technical meaning of those terms. But there is much greater reason for saying that the forfeiture of a forthcoming bond satisfies the original judgment, than there is for saying that by affirmance the first judgment is satisfied.
A forthcoming bond is never taken without a levy, and a levy on sufficient property is a legal satisfaction. The levy remains until the forfeiture, which then takes the place, and is a substitute for the levy. Here the analogy fails. In the case before us the only satisfaction pretended, is the judgment of the Appellate Court, which judgment is not founded on any new consideration, as the judgment on the bond is, but it is a mere ratification' of the first, a mere declaration that it was correct, a decree to carry it out with the legal incidents, as the Chancellor would carry out the lien of a mortgage by a decree to sell the mortgaged premises.
It is also insisted, that the plaintiff cannot have two judgments, and that consequently the last is the only one which is operative. This might all be true, and still it is competent for the law to pre *199 serve the lien of the first. It is true, that a plaintiff cannot have two productive judgments for the same cause of action ; and this, I apprehend, is all that was meant in the case of Clark v. Anderson, 2 How. 852, when the Court said, “ the law will not permit two judgments to exist at the same time against the same person for the same debt.” It was evidently all that was meant in the case of McNutt v. Wilcox & Fearn, 3 How. 419, when it was also said the plaintiff was not entitled to two subsisting judgments for the same cause of action. A plaintiff cannot have execution of two' judgments for the same cause, but that he can have two judgments of record which exist as judgments at the same time seems to me manifest, unless we can invent other means to get rid of-one than" satisfaction, merger, or extinguishment of the first judgment by the second, for neither of these takes place. It is common in England for the plaintiff to bring a new action on bis judgment pending error, or at least there are several cases in which it was done ; and in one case an application was made to stay the proceedings of the second suit before judgment, but they refused'to do so. Execution will be stayed, but the party is at liberty to take his judgment. Now, in all such cases, there are two judgments, but the party can only have satisfaction of one.
We have been referred to the case of Purdy v. Doyle, 1 Paige, 558, to show that the lien of a judgment is lost by a second suit, and it is there so said ; but I have already cited a case from 1 Salkeld, which is directly the other way, and which must be the law, unless the first judgment can be annihilated or disposed of by the second, by making it of higher dignity.
We have also been referred to a case in 3 Yerger, to show that an injunction bond destroyed the lien, because on that bond judgment was to be rendered. It seems rather to have been the impression of the Judge, that it should be so, but it was not decided as a point in the cause. It was a mere argument of the Judge, and is not entitled to the weight of a decision.
When an appeal is taken, a transcript goes to the Appellate Court; the original judgment remains in the Court below, and there can be no difficulty in regarding it as the foundation of a fien. I therefore repeat, that the first judgment exists as a lien from its rendition, deriving additional force from its ratification in the Appellate Court *200 as an operative binding lien, together with the accumulation of the legal incidents or consequences of judgment for damages against the principal and his sureties, which are annexed to the original lien as penalty for délaying its operation. That it is neither satisfied, merged, or extinguished by the second judgment.
Another point was made in the cause, but not seriously relied on. The inclination of my mind is, that it is not tenable. I therefore think the decree of the Chancellor should be affirmed.
Mr. Justice TurneR
delivered the following opinion.
You cannot enforce the lien of a mortgagee without the decree or judgment of a Court of Justice, and the decree or judgment does not extinguish the lien, but provides the means of enforcing it. A vendor’s lien for purchase-money cannot be enforced, but by a judgment. The judgment does not extinguish the lien. And so of liens given in favor of creditors ¡^preference to purchasers, by the registry acts of the State.
It would seem to be unjust to deprive one of his lien, without his consent. Where a plaintiff having a judgment and a lien on defendant’s property, by virtue of his judgment sues out a fi. fa., and procures a levy on defendant’s property, it is the plaintiff’s own act; such levy is considered a satisfaction until exhausted, and a deficit is shown : the forthcoming bond is a statutory security, provided by the statute law ; and the only reason why such a bond, when forfeited, has been construed to satisfy or remove the lien of the first judgment, is because of the levy of the plaintiff’s execution on defendant’s goods.
In case of appeals and writs of error, the reason fails ; and Courts of Justice 'are ever inclined to favor and to sustain liens in favor of creditors. I have heretofore been inclined to a different opinion; but having investigated the subject with more care, I have come to the conclusion that the law is as stated in the opinion of the presiding Judge, and concur in that opinion.
Mr. Justice Clayton
delivered the following dissenting opinion.
The single question presented by the, record in this case is, whether, when a case is taken up by appeal to the High Court of *201 Errors and Appeals, and the decree of the Court below is affirmed, and a decree is entered against all the obligors in the appeal bond; the lien of the original judgment is lost, or still continues. The answer depends upon the construction of the statutes of our State.
The clause of law, which has the most direct bearing on this subject, is the twentieth section of the. act relating to this Court-How. & Hutch. 535. This clause in substance enacts, that a a certified copy of the bond on all appeals shall be transmitted with the record, and in case the decree of the Court below shall be affirmed,-the Supreme Court shall enter up a decree against all the obligors in such bond, both principal and surety, for the debt, damages and costs, which may be adjudged to the appellee ; and it shall be the duty of the clerk of the Court below, on the certificate of the clerk of the Supreme Court, to issue execution thereon accordingly. This is a case from the Chancery Court ; for that reason only so much of the law is transcribed as relates to cases in that Court. But appeals and writs of error which operate as a supersedeas, are placed on the same footing by the statute, and there is no room for any distinction between them. , .
It is stated in argument, that by the English law, after affirmance, the record or a transcript is remitted by the Court below, from which Court the execution issues ; and that the judgment upon affirmance is revived, with every consequence attached to it which would have existed if no appeal had been interposed. It would be difficult to sustain this position, to the extent to which it is here laid down. If a judgment of the Court of Common Pleas be affirmed by the Court .of King’s Bench, execution issues from the latter Court; but if a judgment of the Court of King’s Bench be affirmed by the House of Lords, execution issues from the King’s Bench, upon a transcript which is remitted. 6 Com. Dig. tit. Pleader, p. 364 (3 B. 20) ; Cowp. 343. If a record is removed into the King’s Bench by a writ of error from a County Palatine, the Court of King’s Bench will award execution into any county in the kingdom, which could not have been issued in the Court below beyond the limits of the County Palatine. Com Dig. as above ; 3 T. R. 657. These authorities go at least to qualify and restrict the rule contended for, and to show that it is its own judgment which the *202 Court of King’s Bench executes and enforces, and not that of the inferior Court. It will hardly be thought, that a Court can give an antecedent effect to its judgment, or make it operate as a lien from a period prior to its rendition.
In England it required two separate proceedings to attain the end which is here reached by one. When the judgment was simply affirmed, it could not embrace the bail in error ; if the money was not made by the execution under it, a new proceeding against the bail in error by scii'e facias or action of debt was instituted, and upon that judgment rendered against the principal and sureties a new execution issued. 2 Saundi 72, d. Upon the second judgment, there could be no pretence that there was a lien from the time of the original judgment.
In this State, these two proceedings are blended into one, and when the Appellate Court makes an order of affirmance, it likewise enters a judgment upon the appeal or writ of error bond, against all the obligors, as well the principals as the sureties. This judgment rendered in a summary way, takes the place of the judgment upon the scire facias in England, and is precisely equivalent to it. If upon the judgment rendered upon the scire facias, the lien of the original judgment could not be resorted to, it follows that the correspondent judgment rendered here can have no other consequence attached to it. The judgment here is a new one, and is treated as such in all the statutes upon the subject. The affirmance in this instance is nothing more than the finding of a fact, which warrants the1 Court in pronouncing the new judgment. Upon this the execution emanates, and if issued upon the old judgment, would on application be quashed. A lien, without any mode or remedy to enforce it, would be an anomaly ; and yet this is the fact in regard to the original judgment, if any lien exist, for surely no execution can ever issue upon it.
By our statutes, a final judgment is given in the Appellate Court, and given against new parties ; from that time a lien is created. It is contrary to all the analogies of the law, to say that the lien of the judgment of the. Court 'below likewise exists. In regard to a kindred subject, forthcoming bonds, this Court has heretofore correctly said, “that after forfeiture, the forthcoming bond, by operation of *203 law, becomes a judgment; and as the law will not permit two judgments to exist at the same time against the same person for the same debt, this judgment, by operation of law, necessarily extinguishes the former.” Anderson v. Clark, 2 How. 852. This reasoning is decisive of the case before us.
After an appeal is prayed and granted, and bond given according to law, the Court below has no further jurisdiction of the cause. 1 Tenn. Rep. 2. A sale made under a judgment or decree, after an appeal or writ of error operating as a supersedeas, is absolutely void. Claiborn v. Crockett, 1 Meigs, 607. “ If Parliament omits to give such judgment as the Court below should have given, the Court below cannot afterwards give it, for by the first judgment the Court has executed its authority.” 6 Com. Dig. 464 ; 1 Salk. 403. This goes to prove that it is only the judgment of the Appellate Court which is enforced, whether the execution be issued from the one to the other.
In 5 Yerger, 98, it is holden, “ that in an appeal from a judgment upon scire facias, the judgment must be given against the principal and his surety in appeal, and not that he have execution of his judgment; for the reason that the judgment in the Court above is a new one.” 1 Lord Raymond, 10. An injunction forms an exception to this rule, for the lien of a judgment is ■ not affected by an injunction. This is because the injunction only operates on the person of the plaintiff at law, — not on the judgment the plaintiff is restrained from proceeding ; but the judgment itself is left in full force. Miller v. Estell, 8 Yerg. 452; Overton v. Perkins, Mar. & Yer. 367.
It is asked in argument, as if it presented an unanswerable objection, what is the course to be pursued upon an affirmance of the judgment, in a case in which there is a summons and severance of the parties ? How is execution to go as to those who have not joined in the writ of error ? Is it to be upon the judgment of the Circuit Court, and if so, must not the execution conform to the judgment and be against all the parties ? To this it may be replied, that whether the question of lien 'be decided one way or the other, the difficulty in regard to the execution is the same. By the writ of error, the power @'f the Circuit Court over the case is gone as *204 to those who join in it; and upon the affirmance of the judgment, by the express terms of the statute, the execution is to issue upon the new judgment rendered in the High Court against the obligors in the writ of error bond. Beyond doubt execution cannot issue against those who are no parties to the judgment in the High Court, and it is equally clear that execution cannot issue upon the Circuit Court judgment, against those who are parties to the judgment in the High Court, because by the writ of error the Court below loses all jurisdiction over the parties to it. The consequence therefore follows, that by the summons and severance the judgment which was previously joint becomes severed, and that execution may issue from the Circuit Court, even pending the writ of error, against those who refuse to join in it. After the affirmance and new judgment, it issues against the rest, not upon the judgment of the Circuit Court, but upon that of the High Court. If principles so obvious need authority for their support, the case of Pucket v. Ainsworth, 1 Yerg. 254, will be found fully to sustain them.
From these considerations the conclusion follows, that the judgment rendered in the High Court is a new one ; that the execution issues upon that, and not upon the judgment of the Court below ; and that the lien has effect only from the date of the judgment in the Appellate Court.
The operation of a writ of error without supersedeas, is not considered in this opinion, being left for determination when the case shall arise.
Upon the delivery of the foregoing opinions, Judge Hughes applied in the following petition for a re-argument, which was granted.
To the Honorable, the Judges of the High Court of Errors and Appeals of the State of Mississippi.
In the case of the President, Directors and Company of the Planters Bank of the State of Mississippi against Sarah Calvit, Executrix, &c., on appeal from the Superior Court of Chancery, the undersigned, counsel for appeal, would most respectfully ask of the Court, that a re-argument be allowed. He will briefly state the grounds upon which his application is based.
A bill was filed in the Court below, by the now appellants, *205 against the appellee, in which, in substance, amongst other matters, it is stated, that in June, 1835, a certain Peter C. Goosey was indebted to the complainants in about the sum of twenty-five thousand dollars, and to secure the payment thereof, executed his eight promissory notes, payable in one, two, three and four years, one half at the office of the plaintiffs-, in Natchez, and the other half at the office in Port Gibson ; and to secure the payment and protect his indorsers, Bogart & Hoopes, and others, by deed'in fee, conveyed to Passmore Hoopes, a member of the firm of Bogart & Hoopes, a tract of land in the deed mentioned and seventy-five negro slaves, in trust, &c., and by said deed, upon default, empowered said Passmore Hoopes to make sale and convey to the purchaser as in said deed provided. That the said notes being all due, and unpaid, on the third day of August, 1840, the said Passmore Hoopes, in pursuance of the directions of said deed, having given notice, proceeded to and did sell the land and negroes in the said deed mentioned, and complainants became the purchasers, for about the sum of twenty-two thousand dollars, and the said land and negroes, upon said sale and purchase, were delivered to said complainants by said Passmore Hoopes. See the bill and the exhibit, which shows that the property was delivered to complainants, and by them redelivered to Goosey as the agent of the bank, evidence of which is on the record in Yazoo ; and they expected to have the benefit of their purchase. But now the defendant, Sarah Calvit, by virtue of a decree in the Superior Court of Chancery, against William F. Markham, P. C. Goosey, and C. Dart, rendered in 1834, before the date of the deed of trust before set out (but from which there was an appeal to the Supreme Court, and a decree in said Court affirming the decree below, against principal and security, in 1839), had an execution issued to the sheriff of Yazoo county, which by said sheriff was levied on twenty-five of said negroes, and by virtue of said levy, said sheriff was about to sell said negroes, although as the said bill alleges, previous to the issuance of said execution, by virtue of which said sale was about to take place. The said defendant, Sarah Calvit, or some one for her, caused an execution upon said decree to issue to the sheriff of the county of Warren, against said William F. Markham, Peter C. Goosey, Christopher Dart, *206 and Thomas M. Green, security, which execution came to the hands of said sheriff, and was by him levied on the property, both real and personal, belonging to said William F. Markham, to an amount greatly exceeding the amount due on said execution ; but the property so levied on w'as not sold by reason of injunction ; afterwards the said defendant, Mrs. Calvit, caused vendi-tioni exponas to issue for the sale of the property levied on, which came to the hands of the sheriff, and instead of having the property mentioned in said writ sold, the said defendant, Mrs. Calvit, or some one for her, received from the said William F. Markham one half of the amount due upon said execution, and then permitted the said William F. Markham to have control of so much of said execution ; and the said William F. Markham had the said property sold, and purchased in by his brother, at a great sacrifice, greatly below the cash value thereof, with the money advanced by him, when, had the law been pursued, the execution would have been satisfied; and the bill prays that said Mrs. Calvit be enjoined from selling upon the levy made upon said negroes, and for general relief.
It is not proposed by counsel who makes this application, to inquire into or combat the opinion of a majority of the Court upon the lien of the decree in the High Court. It is only proposed to examine a question which was made on the argument, and in the briefs, and which has not been decided by the Court. In the opinion of Chief Justice Sharkey, this question is alluded to in the last paragraph of the opinion, in these terms : “ Another point was made in the cause, but not seriously relied on ; the inclination of my mind is, that it is not tenable.” It may be that this point was so imperfectly argued and insisted upon by counsel, as to leave the impression that it was not seriously relied upon. If, however, this was so, it is far from the truth. The counsel has always relied upon, and now relies upon this point, as a most material question in the cause, and one too upon which he believes the law is with the appellant. The question alluded to, is that which arises out of the actings and doings of Mrs. Calvit, her agent or attorney, upon the venditioni ex-ponas, issued to Warren county, to sell the property of William F. Markham, which had been levied upon. And here it may be observed, that this question arises entirely on the allegations of the bill, *207 for there is no answer, but the motion to dissolve the injunction in the Court below, was on the bill,° and whatever are the averments of the bill have to be taken as true. Those amounts have already been set out in the abstract already given, and will not be repeated.
By the execution which was sent to Warren county, sufficient property was levied on to satisfy it. The result of which was that as soon as the levy took place, the execution was considered satisfied, and the lien of the decree, by virtue of which said execution issued, was at an end. See Ex parte Lawrence, 4 Cow. 417; Young & Whitcomb v. Read, 3 Yerger, 297; Taylor v. Dundas, 1 Wash. R. 121; Cluk v. Wethers, 2 Ld. Raymond, R. 1072; Ladd v. Blount, 4 Mass. R. 403; Wood v. Torry, 6 Wendell, 562; Mickles v. Haskin, 11 Wendell, 126; Troup v. Wood, 4 John. Ch. R. 254 ; Hoyt v. Hudson, 12 John. Rep. 207.
From the time of the levy upon sufficient property, the estate now claimed by the complainants below, was complete in Goosey, the then owner, freed and discharged of the lien of Mrs. Calvit’s decree, unless by subsequent legal proceedings, or by a proper and legal sale, under a subsequent executor, it should be ascertained that the property was less in value than the amount of execution ; and the counsel of Mrs. Calvit insists that such proceedings took place, and by virtue thereof it was competent for her, Mrs. Calvit, to have execution, by virtue of the lien of the decree for the balance due on the execution against Goosey, notwithstanding the claim of the complainants below, who are purchasers of the estate attempted to be sold by the execution, for value. To this it is answered, that by act of Mrs. Calvit, or her agent, a release of the property seized under the execution took place ; she received one half of the money due on the execution, and then gave up her claim to make the balance of t'he money out of the property seized, and permitted it- to be sold under the execution, for the money which had been paid, at a great sacrifice, and purchased by the brother of Markham, that thereby the levy might be disposed of, so that property of Goosey might be reached ; for this must have been the only object. For the learned counsel who appear in this Court in this cause, was the counsel of Markham, and he well knew, that notwithstanding the payment of one half of the money on the *208 execution, the levy was not discharged, and until it was discharged in some, mode, that another execution could not be issued, or, when issued, levied upon the property of Goosey subject to the lien of the deeree. In these proceedings consists the wrong complained of. In argument it was insisted, that Goosey was joint defendant, was bound for, and should be compelled to pay one half of the execution, and that he had no right to complain. It will be time enough to address Mr. Goosey in this language, when he is sought to be charged properly. The authority, of which there is a note in the brief of Mr. Yerger, points out the manner in which Mr. Goosey is to be reached. If Markham’s property bad all been sold under the execution, in order to compel contribution, he might have resorted to a courtj of equity, and to the amount that he paid over his proportion, he would have been substituted to the rights of Mrs. Calvit, and would have stood in her shoes as to execution, lien, and every thing else. See the cases referred to by Mr. Yerger, of Sells v. Hubbell, 2 John. Ch. R. 397, and Lawrence v. Cornell, 4 John. Ch. R. 545.
In this suit, however, the substitution would not have been declared until the equities between the parties had been examined, and notwithstanding Markham had paid more than one half of the execution, if upon taking an account it had been found that Goosey was not indebted to Markham, his bill would have been dismissed. But instead of pursuing this course to aid Markham, Mrs. Calvit, or those acting for her, by the course pursued, have placed themselves in the stead of a court of equity ; and taking it for granted that Goosey is bound to pay one half of the amount of the decree, are determined that he shall pay. But in pursuing this determination, it is presumed that the Court will hold them to the rules of law, notwithstanding what is said as to Mr. Goosey having no right to complain, being bound by the decree and execution upon it to pay one half. The reply is, that this obligation of Mr. Goosey is a matter with which Mrs. Calvit has nothing to do ; she had her execution, which was levied on the property of Markham, and she had no right to interpose to release the levy. In the case of Young & Whitcomb v. Read, 3 Yerger, 297, which has before been referred to, the Court, in delivering the opinion says, “it cannot be *209 tolerated to let an officer exercise the discretion of abandoning at his pleasure the property he has seized ; nor can it be permitted that the plaintiff in the execution shall, by his order or assent, change the direction which the law affixes to penal process in the hands of her officer.” This language is clear and unequivocal, and is believed to be in accordance with principle, and is sustained by other authorities. Again, the opinion continues, “ when the plaintiff selects his mode, and gives direction to the instruments which the law affords as a mean of attaining his rights, they must be pursued to the end.” “ All the above rules have been departed from, without any apparent reason for it. The first execution, the forthcoming bond, the property seized, and the person primarily liable, have been abandoned, and alias sued out to another county, on which a new series-' of operations are commenced.” And so in this case ; the first execution, the property seized, which was previously liable, have been abandoned, and by a new execution to another county, a new series of operations are commenced, and that, as far as we can see, for no reason, but that thereby the equities between the parties may be enforced. When parties in pais are constituted judges and chancellors, to pass upon the rights and equities of others, it will be time for them to act. It has been said on this point, that the release or discharge of the levy on the property of Markham, being with his consent, another execution could issue against him ; and a fortiori, it must issue at the same time against Goosey, because the judgment is joint against both. It does not necessarily follow, that because execution may issue against one of two joint defendants in a judgment, that therefore it may issue against the other, or be enforced against him.
In the case of Taylor v. Dundas, 1 Wash. R. 121, referred to by Sharkey, G. J. in the case of McNutt v. Wilcox & Fearn, 3 How. 419, it is said, u A second fi. fa. cannot issue on the same judgment against several defendants, if, upon the first, a sufficiency of goods have been taken, no matter'to which of them they belonged.” But suppose one of the defendants, the defendant to whom the property belonged, consented that the levy might be discharged, — could another execution issue on the judgment ? It is admitted that it could, but not against those defendants who bad not agreed to the *210 levy. Again, suppose another of the defendants, one of them who did not own the property levied upon, were to agree that the property levied on should be released, and the sheriff thereon were to release the levy, and instead of returning it to the defendant to whom it belonged, should waste, or destroy, or convert it to his own use, and all without the knowledge or consent of the plaintiff in the execution ? In such case it would, upon the same principle that it is contended for in this case, be insisted that another execution might be issued. And, because it was a joint judgment, it would have to be issued against all; as well he who consented to the release, as he whose property, without his consent, had been wasted and destroyed. This cannot be law, — instead of the rule being, as contended for, that, by reason of the consent given by one to the release of the levy, and the judgment being joint, the execution must issue against both, — it the rather is, that the release of the levy would be an absolute discharge as to both, but for the consent of one ; that consent, however, is binding on him ; but the other, who did not consent, is discharged. And this is upon the ground, that the liability is joint, and whatever discharges as to one, discharges as to both ; thus, it has been decided, that where capias and satisfaciendum issues against two, one is taken, and released with the consent of the plaintiff; the other cannot be taken, because, one being discharged on a joint liability, both are discharged. Bryan v. Simonton, 1 Hawks, R. 51, 52; Clark v. Clement, et al. 6 Term R. 526.
But it has been contended, that the complainants below have no right to say anything, or object to the proceedings of Markham and Calvit in this case ; that the creditors of Markham might complain, but not those of Goosey. In the cáse of Wood v. Torry, 6 Wendell, 562, which is before referred to; the Court say, “ It was the folly of the plaintiff in the execution to relinquish the satisfaction which was in his hands, and an innocent purchaser'should not be the sufferer.”
In that case, an execution had issued, and was levied on personal property, and afterwards lands, which were subject to the lien of the judgment, were sold to a purchaser. The plaintiff then abandoned his levy on the personal property, and sought to sell the land *211 but the Court ordered a perpetual stay of the execution. This, it is true, was in a case where there was but one defendant in the execution, and the innocent purchaser bought from him; but suppose there had been two defendants, one of whom was possessed of land, subject to the lien of the judgment, and the property of the other had been levied on sufficient to satisfy the execution, then a sale by the possessor of the land to a purchaser for value, and then the levy on the personal property abandoned, andan attempt to sell the land, —■ would the purchaser have no right to interfere ? He would most clearly. Because, at the time of his purchase, by a levy upon the personal property of the defendant, the execution was satisfied, the lien of the judgment removed, and “ it was the folly of the plaintiff in the execution to relinquish the satisfaction which was in his hands, and an innocent purchaser should not be the sufferer.” The case of Young & Whitcomb v. Read, ante, was the case of judgment against two as principals, and one as security ; the execution was issued on three horses, sufficient in value to pay the debt; a forthcoming bond taken for the delivery of the property on the day of sale, but the property was not delivered. Another execution issued on this judgment, which was about being levied on the property of the security, when the security obtained supersedeas, and had the execution quashed; and the case was taken to the Supreme Court, where the decision of the Court below was affirmed. And note, this case was in Tennessee, where no such forthcoming bond law as that which we have is in force ; but when a forthcoming bond is given and forfeited, it is the duty of the sheriff to make the money out of the property of him who gave the bond, and his security, immediately. Now, if the counsel who argued this case, had been in Tennessee when the case of Young & Whitcomb v. Read was decided, he might, before the Court there, have argued with the same plausibility that he does here, that another execution might be issued and levied on the property of the defendant Read, because, although the execution had been levied upon the property of one of the defendants, sufficient to satisfy the execution, yet that property so levied upon, being surrendered to that defendant to whom it belonged, with his consent, another execution might issue, as well against the defendant whose property had been released, as the others, because *212 tbe judgment was joint against all; but, notwithstanding such an argument, the Court, it is presumed, would have decided as they did, that another execution could not be issued or enforced ; and that, too, upon the application of one of the defendants, because that defendant had nothing to do with the return of the property levied on, and had an interest that the property of the defendant which was seized should be sold, and thereby save his property from being reached ; — as the complainants here had an interest that the property levied on should be sold bona fide, so that the property purchased from Goosey should be discharged from the lien of the decree.
It is admitted that a levy on property in value sufficient to pay an execution, is not an actual satisfaction or payment, but only a satisfaction in law. And that where property supposed to be of sufficient value, turns out not to be of the value supposed, or when by any act where the sheriff is not in default, or in which the plaintiff has not participated, the property cannot be had to sell, then a new execution may be enforced. Within this rule, however, the defendant, Mrs. Calvit, is not brought; and it is insisted that she had no right to levy on the property of the complainants purchased from Goosey. All which is respectfully submitted. Rob. Hughes,, for appellant. October 27, 1843.
We concur in the views set forth in the foregoing petition, and think a re-argument should be granted. O. B. Hubbard, C. R. Clifton, G. L. Potter. October 27, 1843.
A re-argument was granted on this petition; the question was again fully discussed, and
Mr. Justice Thacher
delivered the opinion of the Court.
This case has received an unusually careful examination by counsel, and profound reflection from the Court. With the advantages of access to the former laborious and learned investigations of my predecessor and associates, the difficulties in forming my opinion have been to a great extent removed.
The Constitution declares, that the High Court of Errors and Appeals shall have no jurisdiction but such as properly belongs to a court of errors and appeals. To a general, although not to a universal extent, it is therefore a revisionary tribunal only. Its *213 judgment of affirmance is then no more than a ratification of what has already been correctly done. It is of no higher dignity than the judgment it affirms, because it is merely confirmatory of it ;'and it is no satisfaction nor extinguishment of it, because it is no payment, and adds to it no greater or more enlarged rights. Whatever rights, therefore, are acquired from the judgment below, are not altered by its affirmance.
The lien which by law a judgment gives is a vested legal right, which was perfect at the date of the judgment below. It can be lost only by the act or consent of its beneficiary. The affirmance is but a repetition of judgment, and the damages thereon constitute but a penalty for the vexation of delay. They are incidents to the appeal, but not parts of the original judgment.
> The above positions are elaborately argued and explained in the opinion of the Chief Justice in this case, and I therefore refrain from their further discussion'as unnecessary for conviction. They are to their whole extent, and in their conclusions, adopted by me.