LEONARD KIRBY *et al. v.* PATRICK FITZGERALD.

DELAWARE AND HUDSON CANAL COMPANY *v.* THE SAME.

Where there are surplus moneys in the hands of the mortgagee arising upon
the foreclosure of a mortgage under the statute, and two several actions have
been brought by judgment creditors of the mortgagor to obtain such surplus,
to be applied on payment of their respective judgments, and a reference has
been ordered to determine to whom, as between the plaintiffs, the same shall
be delivered, and neither party appeals from such order, or applies for an order
for the referee to report the evidence, the proceeding must be treated in all
respects like an order made in pursuance of the 76th rule of the Supreme
Court, to settle the right to surplus moneys in foreclosure cases.

By omitting to appeal from such order of reference, both parties consent to that
method of determining their respective rights.

A statement, in effect, that the defendant had purchased of the plaintiff a cer-
tain indebtedness (describing it), due to the plaintiff, for which he had given
to the plaintiff the promissory notes (describing them), upon which and for
the amount of which he confessed the judgment, is a sufficient statement to
sustain such judgment.

In such case, it is not necessary to set forth the consideration of the debt pur-
chased.

Where a judgment is confessed directly to a third party, who takes the same in
good faith and for value, it cannot be impeached for fraud existing between
the other parties.

But if such third party take such judgment as collateral security only after it
has been confessed, &c., it would be otherwise.

THIS is an appeal by the Delaware and Hudson Canal
Company from an order of the Supreme Court, directing the
payment to the plaintiff Kirby, and others, of certain surplus
moneys arising upon the foreclosure of a mortgage under the
statute.

The mortgage was given by one Patrick McEntee to Fitz-
gerald, in 1853, upon property owned by McEntee; and, upon
a sale of a parcel of the property under the mortgage, the
surplus in dispute arose. It was claimed by Kirby & Co
and the canal company, who were creditors of McEntee.
After the sale, both of these parties claiming the surplus,
suits to recover the same were commenced by each against
Fitzgerald. After the commencement of these suits, Fitz-

gerald, upon notice to the plaintiffs in both cases, applied to the court for relief, and on the 31st of August, 1854, an order was made, directing him to bring the surplus money into court, and it was referred to a referee to ascertain and report which party was entitled to the same.

The parties appeared before the referee, who reported the facts, and decided, as a matter of law, that the Delaware and Hudson Canal Company were entitled to the surplus money; and upon this report a motion was made at Special Term for an order directing its payment to them. This motion was resisted by Kirby and Company, upon the ground that the facts found by the referee entitled them to the money; and it was so decided. An appeal was then taken by the canal company from this order to the General Term, where it was affirmed, and thereupon an appeal is taken to this court.

*R. W. Peckham, Jr.,* for the appellants.

*John H. Reynolds,* for the respondent.

DENIO, Ch. J. The proceeding in the Supreme Court was anomalous in its form. There were two suits depending against Fitzgerald, who, it is conceded, had in his hands $625, which were surplus moneys arising upon the sale under a statute foreclosure, of certain premises which Patrick McEntee had mortgaged to him. The plaintiffs in these two actions claimed to be subsequent judgment creditors having liens upon the equity of redemption. The judgment which the Delaware and Hudson Canal Company held, as assignee, was the earliest in time; but Kirby and others, the plaintiffs in the first above mentioned suit, whose judgment was second in the order of time, claimed that they were entitled to the surplus (which surplus was insufficient to pay the whole of either of the judgments), on the ground that the prior judgment, held by the canal company, was void as against them for reasons which will be presently mentioned. The suits were brought to enforce, against Fitzgerald, the pretensions of the respective plaintiffs to these surplus moneys — the whole amount in the hands of Fitzgerald being claimed

in each suit. Fitzgerald applied to the court at Special Term for relief, on notice to the respective plaintiffs, who appeared by their attorneys on the hearing of the motion. The order thereupon made permitted the defendant to pay the money, after deducting his own costs, into a bank, to be held subject to the order of the court, and directed a reference to Mr. P. F. Cooper to ascertain and report which of the plaintiffs were entitled to the moneys; and he was authorized to determine upon the validity of the judgments. He reported a statement of facts, and his opinion that the plaintiffs, the Delaware and Hudson Canal Company, had the prior right to the surplus moneys by virtue of their judgment against McEntee. The Delaware and Hudson Canal Company accordingly applied to the Special Term for an order directing the moneys to be paid to them, and that motion was opposed by the counsel of Kirby and his co-plaintiffs; but the court, upon the statement of facts reported by the referee, held that the plaintiffs, Kirby and others, were entitled to the said moneys, and directed the same to be paid to them. The order was affirmed at a General Term, and the canal company bring this appeal from that order.

This court has heretofore been moved, on the part of McEntee and others, to dismiss the appeal, which motion was denied; and on that occasion it was held that the referee's statement of facts was in the nature of a special verdict, and that the order was appealable, and, in substance, that the question must be determined upon the statement of facts. (18 N. Y., 484.) The question on that motion was simply whether an appeal to this court would lie from the order; that was definitely settled in favor of the right of review. The question as to the conclusiveness of the facts found by the referee was only incidentally before the court, and, perhaps, what was said upon that question was not necessary to the decision. My own judgment as to the nature of the proceeding would be that the order of reference should be treated in all respects like an order made pursuant to the 76th rule of the Supreme Court, to settle the right to surplus moneys in foreclosure cases. It certainly contains the substance of

such an order, and although the rule is applicable only to fore-
closure suits depending in that court, it was competent for
all parties to consent to litigate the right to the surplus
moneys in this case in a similar form. By omitting to appeal
from the order of reference, I am of opinion that the parties
did consent to that method of determining their respective
rights. Neither party appealed from the order or applied
for an order requiring the referee to report the evidence; but
the question was brought before the court upon the state-
ments in the referee's report. It must, consequently, I think,
be reviewed here upon these statements of fact.

Upon the merits, the question is whether the judgment
under which the canal company claimed the moneys was
void, either absolutely, or as against McEntee and his
co-plaintiffs or not. The statement upon which the judg-
ment was confessed was, in my opinion, a sufficient compliance
with the statute. It is, in effect, that Thomas McEntee, a
son of the defendant Patrick McEntee, was indebted to Col-
mey, the plaintiff in the confessed judgment, in an amount
exceeding two thousand dollars, and that the defendant had
purchased and taken an assignment of a portion of that
indebtedness to the amount of two thousand dollars, and had
given the plaintiff four promissory notes of five hundred
dollars each for the consideration of that purchase, copies of
which notes are annexed. The confession is for the same
purchase price, being the amount of these notes. A debt
incurred in the purchase of property of any kind, whether
real estate, chattels, or choses in action, if the purchase is
real and not merely colorable, is as obligatory as any other
indebtedness; and it is a liability for which a judgment may
properly be confessed. It was not necessary to set forth the
consideration of the debt purchased, for that was simply
matter of description. The *fact*, out of which the debt for
which the judgment was confessed arose, was the purchase
by the defendant from the plaintiff of an interest of $2,000
in the debt which Thomas McEntee owed to Colmey. That
is stated with sufficient precision.

The more difficult question is, whether, under the state-

ments of the referee, the judgment was impeachable for fraud against creditors.  Kirby and his co-plaintiffs were creditors of P. McEntee at the time of the creation of the debt for which the judgment was given, and at the time that judgment was confessed.  They are, therefore, proper parties to attack the judgment, if it is impeachable on the ground of fraud.

On the day of the confession of the judgment, the 14th October, 1853, the canal company was the holder of four promissory notes, of $536.50 each, dated on different days in the preceding August, each at four months, and consequently maturing on the same days in the following December. These notes were made by Colmey, and indorsed by Patrick McEntee.  Either maker or indorser might lawfully confess judgment in favor of the canal company for the indebtedness for which the notes were given, if it were done in good faith and without fraud.  The absence of fraud on the part of that company, in the transaction which followed, is expressly found.  What was actually done was this : On this 14th October, a meeting took place between one Haight, the agent of the company, and Colmey and McEntee, the maker and indorser of these notes ; and it was agreed between these persons as follows : That Colmey should make a payment on the notes of a sufficient amount to reduce them to $2,000, and give four new notes, of $500 each, bearing the same dates as the old ones, and having the same maker and indorser, but payable at nine months instead of four, so that they would mature in May following, thus extending the credit five months beyond the time of the maturity of the former notes ; that the company should have a judgment against McEntee for $2,000, as collateral security for these notes ; that such judgment should be confessed in favor of Colmey, and be by him assigned to the company.  All this was done on the same day, and in execution of that arrangement.  As between Colmey and McEntee, the judgment was to be for the purchase price of the $2,000 of indebtedness existing against T. McEntee in favor of Colmey, which indebtedness was assigned by Colmey to P. McEntee, who gave to Colmey four promissory notes, of $500 each, bearing the same date and

having the same time to run as the notes which Colmey had given to the company, and which notes Colmey was also to indorse, and did indorse, to the company. Certain facts are then found, tending to impeach the *bona fides* of this purchase of the $2,000 of the indebtedness of T. McEntee to Colmey. These are, that the alleged indebtedness was disputed by T. McEntee, who, it is said, claimed that Colmey owed him, instead of his owing Colmey. They had been partners, and there was a controversy respecting their accounts; P. McEntee was then insolvent, and he made the purchase of the interest in the debt which, it was said, his son, T. McEntee, owed Colmey, and gave the notes and confessed the judgment to Colmey, " instead of confessing the judgment directly to the company, in order to assume that amount of T. McEntee's alleged debt, and so give to said Colmey an unjust preference to that extent over the creditors of said Patrick, and thus to hinder and delay the creditors of said Patrick in the collection of their debts and defraud them of the same." It is not stated that the purchase of the debt was merely colorable as between the alleged seller and purchaser. It might be fraudulent if some valuable interest was intended to pass by that purchase; for, if a debtor transfers or creates a lien upon tangible property, for an interest of doubtful validity and an unconvertible character, with the intent and for the purpose of hindering or delaying his creditors, such a transaction, supposing both parties to it to participate in the fraudulent intent, would be plainly void. The position, therefore, of the canal company can only be sustained, if it can be sustained at all, by the consideration that the company was innocent of the fraud, and that, although the judgment was not in form confessed in their favor, it was given under an arrangement between the three parties by which it was to be for the benefit of the company, and to be immediately assigned to them as a part of the transaction. The good faith of the company was, as I have mentioned, found by the referee. We may suppose the case to have been, that the company desired additional security for the debt which they held against Colmey, and for which P. McEntee was contingently

liable as indorser, and that they were willing to extend the time of payment five months beyond the existing time of credit, on obtaining such security. McEntee, though insolvent, held an equity of redemption in the premises mortgaged to Fitzgerald, which was of some value. He was willing to let Colmey have the benefit of this interest, and for that purpose to create a lien by judgment upon it to aid Colmey in obtaining further credit from the canal company, at the expense of his (McEntee's) own creditors. The canal company, represented by Haight, expressed its willingness to give the extension, in consideration of having such a judgment confessed and assigned to it. The arrangement thus suggested was executed; and the precise question is, whether the company is in a better position in regard to this question of fraud than Colmey would have been if he was asserting the judgment in his own right and for his own benefit, or than an assignee from him would have been who was unconnected with the transaction on which the judgment was given, and had subsequently become the purchaser of that judgment upon an independent consideration. In the latter case, the assignee would be concluded by the rule of law which declares that the assignee of a chose in action, not negotiable, stands in the place of his assignor, and is subject to all the rights of other persons which could have been set up against such assignor.

If the judgment had been confessed directly to the canal company, I am of the opinion that it could not be impeached for the fraud existing between Colmey and P. McEntee. A party having a formal demand against another, but which is invalid for any cause, even usury, may procure the assumed debtor to give his obligation directly to an innocent third person, upon a lawful consideration between the creditor in the usurious security and such third person, and the obligation will not be affected by the usury in the original contract; though, if the usurious contract itself be transferred upon a perfectly legal consideration, it will be void in the hands of the party to whom it is thus transferred. I at first thought that the judgment held by the canal company might

be sustained upon this distinction, and by considering it to have been confessed to Colmey as a trustee for the company. But, on further reflection, and an examination of the receipt given by the company's agent to Colmey, I am convinced that the company must be considered as standing in the place of Colmey, and must, equally with him, be subject to the defense of fraud. That receipt of the agent shows that the judgment was collateral to the principal evidence of indebtedness, namely, the notes of Colmey, indorsed by McEntee. Colmey was the principal debtor to the company. He continued to be such, notwithstanding the new arrangement, for the four new notes were made by Colmey and indorsed by McEntee, thus continuing the relation of principal debtor and creditor between Colmey and the company. The receipt acknowledges the delivery of the assignment of the judgment, and of the notes given by McEntee to Colmey on which the judgment had been confessed, *as and for a collateral security* for the payment of the four notes made by Colmey and indorsed by McEntee. It cannot be said, therefore, that Colmey was a mere trustee in the judgment. It was confessed to him for a debt assumed to be due to him, and the assignment of it to the company merely conferred upon it the rights of an assignee, which rights, as has been mentioned, were subject to all just defenses which could have been set up against it, if it had not been assigned. If Colmey should pay the four notes made by him to the company, he would then be remitted to his ownership of the judgment. He was, therefore, the real judgment creditor, and the company were merely assignees of the judgment, standing precisely in the place of their assignors. If it was confessed to defraud the creditors of McEntee, as the referee has reported, Kirby and his co-plaintiffs can avoid it by alleging the fraud, just as they might have done against Colmey.

It follows, that those parties had the first valid lien as the equity of redemption, and that they are entitled to the surplus moneys. The order must, therefore, be affirmed.

Davies, Porter, Davis, Brown and Potter, JJ., concurred.

CAMPBELL, J. All the judges, so far as appears, who have expressed opinions in this matter, concur that the statement on which the judgment was confessed was sufficient.

The judgment as between Colmey & McEntee was, I think, valid and good, with a full knowledge of the adverse claims of his son and Colmey. But as far as this fraud is concerned, it seems to me there cannot be doubt. The judgment stood as a lien on the premises sold, and if there had been no transfer, Colmey would clearly, as judgment creditor, have been entitled to collect and receive to his own use the surplus money, at all events as against McEntee, the judgment debtor. The money would have fallen necessarily into Colmey's hands on the mere proof of the existence of his judgment, unless McEntee could have successfully assailed it. This McEntee could not have done for his own benefit, if he had confessed the judgment for the purpose of defrauding his creditors. The law would have left him where he had placed himself by his own fraudulent act. The canal company, holding as assignees of Colmey, and certainly, I think, for a good consideration, having extended the payment of the notes made by Colmey and indorsed by McEntee, acquired all Colmey's rights. The company took the assignment, as the referee has found, in good faith and without notice of any intent on the part of McEntee to hinder, delay or defraud his creditors. Besides, McEntee was a party to the arrangement by which the judgment was confessed and assigned over to the company, and he would be barred from setting up any equities as against the company if he had any as against Colmey. As was said by Chief Justice DENIO, in *Bush* v. *Lathrop* (22 N. Y., 548), "one proposing to purchase the security can easily ascertain whether the person who gave it pretends to any defense. If he disclaims having any, and a purchase is made on the faith of such disclaimer, the assignees will be entirely safe against any which shall be afterwards asserted." The arrangement between the parties was a virtual disclaimer by McEntee as to any defense to the judgment in the hands of the company. As against McEntee the rights of the company were perfect. The rule that a

party taking an assignment, transfer or conveyance of a chose in action, not negotiable, is subject to all the equities between the original parties, has no application or force in this case.

When can the creditors of McEntee successfully attack the judgment in the hands of the company? The language of the statute is, among other things (3 R. S., p. 224, § 1, 5th ed.), that every "decree or judgment suffered," with intent to hinder, delay and defraud creditors, shall be void as against the persons thus hindered, delayed or defrauded. But the ensuing section (§ 355) declares that the provisions of the chapter "*shall not be construed in any manner* to affect or impair the title of a purchaser for a valuable consideration, unless it appears that such purchaser had previous notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor." Now, the referee has found that the company had no notice of any fraudulent intent, and I suppose we are to take that finding as entirely conclusive in this case. If there was a valuable consideration on the part of the company, then we are forbidden to construe any of the previous sections, *in any manner*, to affect or impair its title to the judgment.

I have already remarked that the extension of the time of payment of the notes on which both Colmey and McEntee were liable, was a valuable consideration. When the transfer is made to a creditor "there is no doubt (says Mr. Justice SELDEN in *Seymour* v. *Wilson*, 19 N. Y., 421) that the debt paid or *secured* by the transfer must in such a case be regarded as a *valuable consideration* within the section, which shows the rights of *bona fide* purchasers."

The referee decided correctly; and the order of the Supreme Court should be reversed, and the report of the referee confirmed.

Judgment affirming the order of the Supreme Court.