*PURDY *v.* DOYLE AND OTHERS.

[*558]

Where land is sold under a decree of foreclosure and the surplus is brought into the court, judgment creditors who had obtained a specific lien thereon at law before the foreclosure are entitled to a priority of payment out of the proceeds according to the dates of their respective judgments.[1]

But if the person against whom their judgments were obtained had only an equitable estate in the mortgaged premises, so that the judgments could not bind his interest at law, the creditors here are to be paid upon the basis of equality only.

The rule of this court as to equitable assets is to put all the creditors on an equal footing.

Where assets are partly legal and partly equitable, this court cannot take away the legal preference as to the legal assets; but if one creditor has by

---

[1] See *Lemmon* v. *Heirs of Staats*, 1 Cow. 592.

1829.

Purdy
v.
Doyle.

reason of his priority been partially paid out of the legal assets, when satisfaction comes to be made out of the equitable assets, his claim thereon will be deferred until the other creditors have been paid a proportionate amount out of the equitable assets.

A bill filed in this court against heirs or devisees, has the same effect as the commencement of a suit at law in preventing the alienation of the estate. But if a judgment at law is obtained before the decree in this court, the plaintiff in such judgment thereby obtains a prior lien on the legal estate in the hands of the heirs or devisees.

Where a suit is commenced against five heirs for the debt of their ancestor, and the writ is only served upon three, but the plaintiff proceeds and takes judgment against all as joint debtors, he obtains a lien only upon the estate of those upon whom the process was served.

Where a creditor has obtained a lien upon a real estate by a judgment at law, if he subsequently brings an action of debt on his judgment, and recovers a new judgment, he will lose his first lien.

August 4th.

[*559]

THIS was a creditor's bill, against the heirs and personal representatives of Dennis Doyle deceased, and was filed in April, 1827; and an injunction obtained restraining the defendants from disposing of or intermeddling with the estate of the intestate, or the proceeds thereof. After the service of this injunction, O'Connor, one of the administrators, who held a note against the intestate, brought a suit thereon against the infant heirs of Doyle, in the New York Common Pleas. The writ was served upon three out of the five heirs. John Doe, a fictitious person, was appointed the guardian *ad litem* of these three. And judgment was entered *against all the defendants, in like manner as upon a proceeding against joint debtors under the statute. This judgment was for $471 30, and was docketed on the 3d of July, 1827. Dennis McCarty, another of the administrators, also brought a suit, in his own name, against the heirs, and obtained a judgment in the same way for $122 31; which was docketed on the 18th of September, 1827. Patrick Barry, a creditor, also brought a suit and obtained a judgment in the same way for $599 59, which was docketed the 21st of September, 1827. John McDonough also brought a similar suit and obtained judgment in the same court for $130 69. He then brought an action of debt on

that judgment in the Supreme Court, and recovered a new judgment thereon, which was docketed in May, 1828. The testator at his death was the equitable owner of a tract of land at Bloomingdale, subject to a mortgage to the Eagle Fire Company. That mortgage has since been foreclosed, and the surplus proceeds of the sale of the premises, amounting to $2,202 35, have been paid into court, where they now remain. The complainant presented his petition, setting forth, among other things, that the judgments were not all justly due, and praying that the surplus moneys might be invested to abide the further order of the court, and that the same should not be paid out to the judgment creditors.

*H. Bleecker* for the petitioner.

*J. McKown* for the administrator.

*D. Selden* for P. Barry.

*J. Rhoades* for J. McDonough.

THE CHANCELLOR :—The first question presented in this case is whether the fund in court is either legal or equitable assets. If it is such property as the judgment creditors could obtain a specific or general lien on at law, they are entitled to the fruits of their superior vigilance so far as they have succeeded in getting such lien. But if the property was in such a situation that it could not be reached by a judgment at law, and the fund is raised by a decree of this court, and *the creditors are obliged to come here to avail themselves of it, they will be paid upon the footing of equality only. (*Codwise* v. *Gelston*, 10 John. Rep. 507.) It clearly appears by the affidavits before me in this case that, as to one-half of the property out of which the fund in court was raised, the legal title never was in the ancestor, and of course it did not at law descend to the heirs.

1829

Purdy
v.
Doyle.

[*560]

1829.

Purdy
v.
Doyle.

The first section of the act for the relief of creditors against heirs and devisees gives an action against the heirs of a debtor who dies seized of lands, &c. At law a contract to purchase and payment of the purchase-money does not give the purchaser a legal seizin of the land. In this court it is otherwise; and on the equity of that statute this court would give to the creditors satisfaction out of the equitable interest in the land descended to the heirs. But when the creditors come here for the purpose of reaching the equitable rights of the heirs, they must submit to the equitable rule of this court. In *Morrice* v. *The Bank of England,* (Cases Temp. Talb. 218,) that rule is stated thus: "The rule of this court with regard to equitable assets is to put all the creditors on an equal footing; so where the assets are partly legal and partly equitable; and though equity cannot take away the legal preference on legal assets, yet if one creditor has been partly paid out of such legal assets, when satisfaction comes to be made out of the equitable assets, the court will defer him until there is an equality in satisfaction to all the other creditors, out of the equitable assets, proportionable to so much as the legal creditor has been satisfied out of the legal assets.[1] The complainant filed his bill in this court, in behalf of himself and of all other creditors, to reach this equitable property in the hands of the heirs. This was equal to the commencement of a suit at law to prevent the alienation of the assets. (*Searle* v. *Lane,* 2 Vern. 88.) But if the legal title was in the heirs, the subsequent suits at law, in which judgments were obtained before any decree here, would give the judgment creditors a preference over any other creditors whose debts were of equal degree; and the heirs would not be obliged to defend those suits.[2] (*Mactier* v. *Lawrence,* 7 John. Ch. Rep. 206; *Martin* v. *Martin,* 1 Ves. sen. 211.) As to the remaining half of the land sold *under the mort-

[*561]

[1] *Wilder* v. *Keeler,* 3 Paige, 176; *Slade* v. *Van Vechten,* 11 id. 21.
[2] 2 R. S. (4th ed.) 606, sec. 4.

gage, it is stated in some of the affidavits that the deed was signed and acknowledged in the lifetime of the testator; but it does not distinctly appear whether it was actually delivered to him, so as to pass the fee, or was retained in the hands of the grantor until it should be executed by Heeney, the owner of the other half. If the intestate was actually seized of this half at the time of his death, the judgments recovered against the infant heirs would give the plaintiffs therein respectively a legal preference as to the three-fifths of the surplus arising from that half over any other creditors of equal degree. But those judgments cannot affect the other two-fifths which belonged to the heirs who were not taken in the suit. As to them the judgments were no lien on their share of the land. This was so decided by the Supreme Court, in *Jackson* v. *Hoag*, (6 John. Rep. 59,) where a sale under such a judgment was held not to affect the rights of the heirs who had not been served with process. There is another difficulty in this case which has not been explained by the administrators who are the owners of two of the judgments. It is stated in the petition that on a sale of other real estate which belonged to these infants there was a surplus of $2,200, which has been paid to the administrators. If such is the fact, they ought to account for that sum and have it applied to the payment of their judgments, before they are entitled to come upon the fund in court. If the judgments of Barry and McDonough were prior to those of the administrators, an order might be made for the payment of so much of the fund as they have a specific lien upon towards their debts. But Barry's judgment is subsequent to both of those belonging to the administrators; and McDonough, by prosecuting a subsequent suit to judgment in the Supreme Court, has lost his first lien, and must now be postponed even to Barry, whose judgment is now the eldest.

Under these circumstances the fund in court must be invested by the assistant register, and remain until all the

entangled equities between the parties are finally disposed of under a general reference in this suit; and the question of costs on this application is reserved until further order.