## AVERILL *vs.* LOUCKS.

An assignment for the benefit of creditors, which substantially reserves to the assignors the right to give future preferences, is fraudulent and void as against the creditors of the assignors who have not assented thereto.

Accordingly, where an assignment directed the assignees to pay the debts specified in the schedules annexed thereto, according to the priority of the several schedules, and provided that such schedules should be made within 60 days, and be annexed to, and form a part of the assignment, but did not prescribe what debts should be inserted in the respective schedules, or in what order they should be arranged therein; the preparation of such schedules being left entirely to the discretion of the assignors; and it appeared that such schedules had not been made out and annexed to the assignment previous to its execution, but that they were prepared by the assignors and annexed at some subsequent time; *Held* that the assignment was fraudulent and void.

The assignment must itself fix and determine the rights of the creditors in the assigned property, and not reserve to the assignors the power of subsequently doing so.

The fact that the assignment requires that the power reserved to the assignors shall be exercised within a certain specified time does not alter the principle.

Averill *v.* Loucks.

Even if the schedules are prepared and annexed within the time prescribed by the assignment, this will not render the assignment valid from the time the schedules are annexed.

The assignment, if fraudulent and void when executed and delivered, will not be rendered operative and valid by any subsequent act of the assignor.

Assignees acting under a void assignment, will not be held accountable for that part of the proceeds of the assigned property paid over by them to the preferred creditors, in pursuance of the assignment, before any other creditors have obtained a lien upon the assigned property.

Where a mortgage is given as collateral security for notes and drafts, and not in satisfaction thereof, the latter will not be extinguished by the former.

Where a partner gives a mortgage upon his separate property, to secure a partnership debt, he thereby becomes a surety for the firm, and is entitled to the rights and privileges of that character.

His separate creditors succeed to his rights and privileges as such surety. He, and his separate creditors, therefore, have a right to insist that the partnership property, being primarily liable, be first applied towards the payment of the debt, secured by such partner, before resort is had, for that purpose, to the separate estate of the surety.

And if the separate estate of the surety is first applied in payment of such debt, his separate creditors will be entitled to be subrogated to the rights of the creditor, as against the partnership fund.

Courts of equity, in the administration of assets, follow the rules of law in regard to legal assets, and recognize and enforce all antecedent liens, claims, and charges existing upon the property, according to their priorities.

Where land is sold under a judgment, and the surplus moneys are brought into court, creditors having liens upon the land, subsequent to the judgment, have the same liens upon the surplus moneys which they had upon the land, previous to the sale.

Their liens are transferred from the land to the surplus; and such surplus must be applied in discharge of the liens, according to the order of their priority.

THIS was a motion, made in behalf of the Agricultural Bank, and of the assignees of the defendant Loucks and of his copartner, Morgan Gray, for an order directing the sheriff of the county of Montgomery to pay over the surplus moneys in his hands, arising on the sale of real estate of the defendant under the execution issued in the above cause, to the Agricultural Bank, on a mortgage of said bank, given by the defendant, on one of the lots sold by the sheriff. The judgment in the above suit was docketed on the 11th of July, 1846. The sheriff advertised for sale under the execution issued on such judgment, and three executions issued on three judgments against George

P. Loucks, the above defendant, and Morgan Gray and Peter G. Loucks, seven lots of land in Canajoharie. Lots 3dly, 4thly, 5thly and 6thly described in the advertisement of sale, were sold on the four executions. Lot 6thly described was first sold and was struck off for $1300. Lot 5thly described, was next sold for $2300. William I. Bellinger, who owned the four judgments, was the purchaser. The sale of these two lots satisfied the execution issued on the judgment in favor of Lewis Averill, and left a surplus of $1500. The sheriff then sold lots 3dly and 4thly described, on the three younger executions, for $10; which were also struck off to William I. Bellinger. On the 4th of September, 1848, George P. Loucks and Morgan Gray, who were copartners, assigned all their copartnership property, both real and personal, to assignees, in trust for their partnership creditors. On the same day, George P. Loucks assigned all his individual property in trust for the payment of his separate debts. The assignment of Loucks & Gray declared that the assignees should pay the debts in the schedules A., B., C., D. and E., annexed to the assignment. And it provided that the schedules were to be made and prepared as early as practicable, and within 60 days from the date thereof, and to be annexed to, and form part of the assignment. And the assignment declared that the debts in schedule A. should be preferred before those in the other schedules; those in B., over those in C., D. and E.; those in C. over those in D. and E.; and those in D., over those in E. The separate assignment of George P. Loucks, contained similar provisions as to preferences. This assignment was recorded on the 5th day of September, 1848. The schedules of debts, referred to in the assignment, were not recorded with it. And it did not appear when the schedules of debts referred to in either assignment, were made and prepared and annexed to the assignments. The assignment of Loucks & Gray, in referring to schedules D. and E., stated that they were to be annexed to and form a part of the assignment. George P. Loucks, on the 4th of September, 1848, and prior to the assignments, gave to the Agricultural Bank, a mortgage for $6000, on lots 5thly and 2dly described in the sheriff's advertisement. The three

junior judgments belonging to Bellinger, were docketed on the 28th and 29th of September, and on the 21st of December, 1848. The mortgage of the Agricultural Bank, was given by George P. Loucks as a collateral security for a debt of Loucks & Gray. This debt was preferred in the assignment of Loucks & Gray, being the first debt mentioned in schedule A. The buildings on lots 1, 2 and 7, were erected with the partnership funds of Loucks & Gray. These lots, with the exception of the buildings thereon, and lots 3, 4, 5 and 6, were the individual property of Loucks. Loucks also owned two other lots not described in the sheriff's advertisement. Loucks and Gray, when they executed the assignments, were insolvent; and the partnership property assigned was insufficient to pay their partnership debts. The three junior judgments were recovered on partnership notes, for debts of the partnership. Lot No. 2, covered by the mortgage of the Agricultural Bank, was mortgaged by George P. Loucks, for the purchase money, to an amount equal to the value of the lot, exclusive of the improvements which had been made by Loucks & Gray, and paid for with partnership funds; which improvements were worth $2450. A part of the debt due to the Agricultural Bank had been paid by the assignees of Loucks & Gray, out of the partnership property assigned to them. The assignees of Loucks & Gray insisted that the judgment of Averill should be collected out of the individual property of George P. Loucks, other than the lot fifthly described, so as to leave that lot to be applied in payment of the mortgage of the Agricultural Bank, in exoneration of the partnership fund; to the end that the partnership fund might be applied in payment of the partnership creditors preferred next after the Agricultural Bank. The partnership property assigned, was more than sufficient to pay the debt of the Agricultural Bank.

*T. B. Mitchell & H. Loucks,* for the Agricultural Bank and the assignees of Loucks & Gray.

*D. G. Lobdell & J. A. Spencer,* for William I. Bellinger.

*By the Court,* PAIGE, P. J.   The motion in this case is made for the benefit of the partnership creditors of Loucks & Gray, who are preferred in the assignment of Loucks & Gray next after the Agricultural Bank.   The debt of the Agricultural Bank is a partnership debt of the firm of Loucks & Gray, and is first preferred in the assignment.   It is objected by the counsel of William I. Bellinger that the assignment of George P. Loucks is void because he substantially secures to himself the right to give future preferences.   The assignment of Loucks & Gray is obnoxious to a like objection.   Their assignment of their partnership property creates six classes of debts; the debts placed in the first five classes to be inserted in schedules marked A. B. C. D. and E.   In the assignment it is stated that schedules A. B. and C. are annexed to the assignment; and that schedules D. and E. are to be annexed to, and form a part of, the assignment.   The concluding clause of the assignment provides that the schedules to the assignment are to be made and prepared as early as practicable, and within 60 days from the date thereof, and to be annexed to and form a part of the assignment.   The affidavits do not show when these schedules of debts were made out and annexed to the assignment.   The assignment itself bears date, and was executed, on the 4th day of September, 1848.   It was recorded on the 5th day of September, 1848.   The certificates of acknowledgment and of the recording of the assignment precede the schedules.   This is a circumstance which indicates that the assignment was executed and delivered before the schedules were annexed.   The assignment prefers the debts in schedule A. over all the debts in the other schedules; the debts in schedule B. over those in C. D. and E.; those in schedule C. over those in D. and E.; and those in D. over those in E.; and the assignment declares that the debts in B. C. D. and E. are to be paid in the order in which they are put down in such schedules.   The individual assignment of George P. Loucks bears date, and was executed, on the day of the date of the assignment of Loucks & Gray, and was recorded at the same time that assignment was recorded.   It conveys to the assignees all the real estate of the assignor, and

states that a schedule of the same is annexed. It assigns also all the assignor's personal property; and directs the assignees first to pay out of the assigned property the debts of the assignor in schedule B., stated to be annexed to the assignment, and in the order in which they are put down in the schedule; secondly, to pay the debts in schedule C., also stated to be annexed to the assignment, in the order in which they are put down in such schedule; and thirdly, to pay the debts in schedule D. The last clause of the assignment provides that an inventory of all the personal estate shall be made, as early as practicable, and annexed to and form a part of, the assignment; and that the schedules referred to in the assignment are to be made within 30 days from the date thereof, and to be annexed to and form a part of, the assignment. This assignment was recorded on the 5th day of Sept. 1848, without the schedules. And it appears by the certificate of the county clerk, dated May 3, 1849, that they had not been recorded, at the date of that certificate. I infer, from the evidence before us, that the schedules of debts referred to in the two assignments, had not been made out and annexed to the assignments when they were executed and delivered to the assignees; and that such schedules were prepared by the assignors, and annexed at some subsequent time. The assignments do not prescribe what debts shall be inserted in the respective schedules, or in what order they shall be arranged in such schedules. The preparation of the schedules is left entirely to the discretion of the assignors. The preference of one debt over another was to be determined by the class in which it was placed, and by the order in which it was inserted in such class. The right to give this preference was reserved by the assignors in the one assignment for the space of 60 days, and in the other for 30 days. Neither assignment declares the uses, nor fixes and determines the rights of the creditors, in the property assigned, but the power of subsequently doing this is reserved to the assignors. This, according to the settled doctrine of the courts of this state, renders the assignments fraudulent and void, as against such creditors as have not assented to them. The effect of the provision that the assign-

ors may, at a future period, prepare and annex the schedules of the debts, giving preferences to the creditors, is substantially reserving to themselves the right to give future preferences among their creditors. That the right to give preferences is limited in the one case to 60 days and in the other to 30 days, it seems to me, does not obviate the objection to the assignments. The vice is inherent in the assignments. The law requires that the assignment must itself fix and determine the rights of the creditors in the assigned property. The principle is the same whether the assignor reserves the right to determine the preferences to be given, within 60 days, six months, or three years. In either case it places the creditors in the power of the debtor, and compels them to acquiesce in such terms as the debtor may think proper to prescribe as the only conditions upon which they are permitted to participate in his property. This is a fraud upon the creditors, and necessarily delays and hinders them in the collection of their debts. (*Wakeman* v. *Grover*, 4 *Paige*, 41; *S. C.* 11 *Wend.* 203, 221. *Barnum* v. *Hempstead*, 7 *Paige*, 571. *Boardman* v. *Halliday*, 10 *Id.* 227, 228. *Sheldon* v. *Dodge*, 4 *Denio*, 221. *Hyslop* v. *Clark*, 14 *John.* 462.) It may perhaps be urged that the assignments are not absolutely void, but may be regarded as imperfect instruments until the schedules are annexed, and that they can take effect as valid instruments at the time of the annexation of the schedules. I think, however, that even if the schedules were prepared and annexed within the time prescribed by the assignments, the assignments can not be considered valid, even from the time such schedules were annexed. The assignments, if fraudulent and void when executed and delivered, could not be rendered operative and valid by any subsequent act of the assignors. It is possible that the assignees may be able to show that all the schedules of debts were prepared and annexed to the assignments before they were executed and delivered. I will therefore not preclude them, by the disposition of this motion, from showing that fact on any future motion in this suit, or in any other suit which may be hereafter commenced, involv-

ing the question of the validity of the assignments, or of either of them.

It is not necessary, on the decision of this motion, to determine what effect the provisions in the assignment of Loucks & Gray in relation to schedules D. & E. which convey the idea that they are to be annexed at some future time, have upon the validity of that assignment. I shall consider, for the purposes of this motion, that both assignments are fraudulent and void; and that therefore the assignees have no right to interfere with the disposition of the surplus moneys in the hands of the sheriff. The assignments will undoubtedly be considered valid as to such creditors as have assented to them. And the assignees will not be held accountable for that part of the proceeds of the assigned property paid over by them to the preferred creditors, in pursuance of the assignment, before any other creditors obtained a general or specific lien on the assigned property. (4 *Paige*, 24, 42. 5 *Id.* 22.)

It appears by the opposing affidavits that the mortgage given by George P. Loucks to the Agricultural Bank, for $6000 on lots secondly and fifthly described in the sheriff's advertisement of sale, was given as collateral security for partnership notes and drafts of Loucks & Gray, and which are the same notes and drafts that are preferred in schedule A. of the assignment of Loucks & Gray. The mortgage not having been given in satisfaction of these notes and drafts, the latter were not extinguished by the former. (*Drake* v. *Mitchel*, 3 *East*, 251, *cited in Robertson* v. *Smith*, 18 *John.* 480, *per Spencer, J.*) Loucks, by giving the mortgage on his separate property, became a surety for the firm, to the Agricultural Bank, and is entitled to the rights and privileges of that character. And his separate creditors succeed to his rights and privileges as such surety. Loucks and his separate creditors have a right to insist that the partnership property, being primarily liable, be first applied towards the payment of the debt of the Agricultural Bank, before resort is had, for that purpose, to the separate estate of George P. Loucks. And if the separate estate of Loucks is first applied in payment of such debt, his separate creditors will be entitled

to be subrogated to the rights of the Agricultural Bank, as against the partnership fund. ( *Wilder* v. *Keeler*, 3 *Paige*, 167, 170. *Besley* v. *Lawrence*, 11 *Id*. 588.)

The three junior judgments of William I. Bellinger were recovered on partnership notes, and they must therefore be regarded as partnership debts. The contest then, on this motion, between the Agricultural Bank and William I. Bellinger is a contest between two partnership creditors of Loucks & Gray ; both of whom have acquired legal, specific, and general liens on the individual real property of George P. Loucks, one of the partners. Of these liens a court of equity can not deprive them. Courts of equity, in the administration of assets, follow the rules of law in regard to legal assets, and recognize and enforce all antecedent liens, claims, and charges existing upon the property, according to their priorities. (*Story's Eq. Jur.* § 553.) The property in question (the lot fifthly described in the sheriff's advertisement) was of such a nature that the judgment and mortgage creditors of George P. Loucks and of Loucks & Gray, could obtain a general and specific lien thereon, at law. The Agricultural Bank, by its mortgage, acquired a specific lien ; and Bellinger, by his three judgments, obtained a general lien, on each lot, before its sale by the sheriff. And they have the same liens on the surplus moneys arising on the sale thereof, under the prior judgment of Lewis Averill, which they had on the lot before the sale. Their liens are transferred from the land to the surplus ; and such surplus must be applied in discharge of such liens according to the order of their priority. (*Purdy* v. *Doyle*, 1 *Paige*, 558 ; *De La Vergne* v. *Evertson, Id*. 181.) The Agricultural Bank acquired its lien before the three junior judgments of Bellinger were docketed. The whole surplus, therefore, if the sale is not set aside, must be applied on the mortgage of the Agricultural Bank, as it appears that at least an amount equal to the surplus is due on the mortgage. That the sale was on the four executions can not affect the right of the Agricultural Bank to the surplus, as the purchaser will derive his title under the eldest judgment, which, unless the Agricultural Bank is permitted to take the surplus, will effectually

Averill *v.* Loucks.

deprive the bank of its lien on the land, and will give a priority over the lien of the mortgage to junior judgments, which would be contrary to the rules both of law and equity.

I do not think that the rule which prevails where a judgment creditor has a lien upon two funds, and a second judgment creditor a lien upon one of them, will aid Bellinger. To make this rule applicable, the assignment of Loucks & Gray must be considered as valid, in which the Agricultural Bank is preferred. If this assignment is regarded as valid, it gives the partnership creditors preferred therein next after the Agricultural Bank, a preference over Bellinger as the owner of the three junior judgments; as their equity is coeval with the execution of the assignment, which was prior in point of time to the equity of Bellinger, which arose at the time his three judgments were docketed. The equity of those partnership creditors being equal to that of Bellinger who is also a partnership creditor, and prior in point of time, they would have a right to insist, as against Bellinger, that the Agricultural Bank first exhaust its remedy against the individual real property of George P. Loucks, included in the mortgage. (*Besley* v. *Lawrence*, 11 *Paige*, 587, 588.) As against the separate creditors of George P. Loucks, these partnership creditors would have no such equity. If Bellinger conceives that, having by superior diligence, obtained judgments against Loucks & Gray, and acquired thereby a general lien on the individual property of George P. Loucks, he has, by virtue of such lien, the rights of a separate creditor, I will leave him to assert that right in some other proceeding than on this motion.

If both assignments are regarded as valid, the separate creditors preferred in the individual assignment of George P. Loucks, would have a right to compel the Agricultural Bank to resort to the partnership fund for payment, before enforcing their remedy against the individual property of George P. Loucks, as the partnership fund is primarily liable for the payment of the debt of the Agricultural Bank; and as the established rules of equity, on the insolvency of a partnership, or the death of one of the partners, give a partnership creditor a preference in

payment, out of partnership property, and separate creditors a preference in payment out of the individual estate of the co-partners. (6 *Paige*, 20. *Payne* v. *Matthews*, 3 *Id.* 167, 171, 172.)

I will not attempt to settle on this motion, all the equities of the parties before the court, and also of other parties who are not represented here. (4 *Paige*, 23.) But I will leave them to be disposed of in some suit or proceeding in which all the parties in interest may be brought before the court, and all the facts having a bearing upon the case, may be presented.

In the opposing affidavits, it is stated that the lot fifthly described in the sheriff's advertisement, was bid off by the counsel of Bellinger, for a sum exceeding its value, and solely in view of the bid being applied upon the four executions on which it was sold. And the lots thirdly and fourthly described in the advertisement were probably sold under the impression, on the part of the partnership creditors of Loucks & Gray, that the assignments were valid, and they may therefore have omitted to bid up such lots to their full value. I have therefore come to the conclusion that the sale of lots fifthly, thirdly and fourthly described in the sheriff's advertisement should be set aside, without prejudice to the right of Bellinger to resell under his executions, the same lots, or any other property subject to the lien of his judgments, and without prejudice to the right of any of the parties to file a complaint, or to institute any other legal proceeding to test the validity of the assignments, and to settle the rights of the partnership and individual creditors of Loucks & Gray in their partnership and individual property. No costs are to be allowed, on this motion, to any of the parties.

Ordered accordingly.