## MATHEWS v. DURYEE.

December, 1868.

Affirming 45 *Barb.* 73; S. C., 17 *Abb. Pr.* 256.

A dowress, whose interest is paramount to the mortgage under fore-closure, and who is made a party to the foreclosure, but has no notice of the proceedings to distribute the surplus, and does not appear and claim her share therein before the referee, is not concluded by the order of distribution, but may maintain an action to recover her share from one who receives it under such order.

Nor is she precluded from maintaining such action, by the fact that the defendant received the money as trustee, and has brought an action to settle the trust, in which action she, though a party, has not set up her claim.*

Sarah A. Mathews sued Sacket L. Duryee and others, in the supreme court, to recover her dower in surplus money arising on a foreclosure suit.

Charles L. Mathews, the plaintiff's deceased husband, was owner in fee in his lifetime of lands, subject to three mortgages, two of which were executed by both Mr. and Mrs. Mathews, and one of which, being for part of purchase money, was executed by Mr. Mathews alone.

After the mortgages were made, Mr. Mathews assigned all his property, in trust for benefit of creditors, to the defendant, Duryee; and subsequently the holders of the mortgages foreclosed them by action, joining Mr. and Mrs. Mathews and Duryee as defendants. Mrs. Mathews did not appear in that action. On the sale of the lands a surplus arose, and Duryee (there being still creditors of the husband unpaid), applied to the court for the surplus, and the court awarded it to him.

Subsequently Duryee brought an action to settle his trust, and be discharged, in which he joined the creditors and Mrs. Duryee as parties. Mrs. Duryee did not appear in that action.

---

* But compare Craig v. Ward, vol. 1 of this series; Burwell v. Knight, 51 *Barb.* 267; Campbell v. Consalus, 25 *N. Y.* 613; Malony v. Horan, 12 *Abb. Pr. N. S.* 289; S. C., 49 *N. Y.* 111; Kerr v. Blodgett, 48 *N. Y.* 62, reversing in effect 16 *Abb. Pr.* 137; S. C., 25 *How. Pr.* 303.

Mathews v. Duryee.

She now sued to recover her dower in the surplus; and the main question was, whether she was not barred by the decision awarding the surplus in the foreclosure action, or by her failure to appear and present any claim in the action to settle the trust, which action was now pending.

*The supreme court,* on substantially the same grounds as those assigned by this court, sustained the action; and defendant appealed to this court.

*Marsh, Coe & Wallis,* for defendant, appellant; — Cited, Denton *v.* Nanny, 8 *Barb.* 618; Vartie *v.* Underwood, 18 *Id.* 561; Dougrey *v.* Topping, 4 *Paige,* 94; Van Vleek *v.* Clark, 24 *How. Pr.* 190; Canfield *v.* Monger, 12 *Johns.* 347; Acker *v.* Ledyard, 8 *N. Y.* (4 *Seld.*) 62; Demarest *v.* Darg, 29 *How. Pr.* 266; McLean *v.* Tompkins, 18 *Abb. Pr.* 24; Burr *v.* Bigler, 16 *Id.* 177.

*W. Gleason,* for plaintiff, respondent.

BY THE COURT.—BACON, J.—That the plaintiff is endowable of the surplus which remained after the payment of the mortgages which had been foreclosed, is too well settled to be questioned. Hawley *v.* Bradford, 9 *Paige,* 200; Vartie *v.* Underwood, 18 *Barb.* 561. Nor will her right be affected, whether the sales upon the foreclosure suits took place before or after the death of her husband, for it has been decided in this court that the inchoate right of dower of the wife is as much entitled to protection as the perfected or vested rights of the widow. Mills *v.* Van Voorhies, 20 *N. Y.* 412. Indeed these propositions are not denied by the counsel for the defendant; but the ground of defense here is, that she has lost her right to make such claim in this suit by reason of her omission to assert it, either during the pendency of the foreclosure suits, or upon the application after the sale for the distribution of the surplus, or in the suit subsequently brought by the defendant against the creditors of the husband to settle the order of payment, and enable him, as assignee of the deceased husband, to close his trust. To both suits the plaintiff was made a party, and a summons was served upon her, but in neither did

Mathews *v.* Duryee.

she appear, or put in any answer. The question is, whether, by reason of such non-appearance in these actions, and by her failure to file a notice and make a claim for the surplus moneys, she is precluded from maintaining the present action claiming dower in the surplus.

The judge, before whom the cause was tried, finds the facts upon which the defendant's counsel bases his claim to defeat the action; and he also finds, that she had no notice of the proceedings in relation to the distribution of the surplus money, except the service of the summons in the foreclosure suits; that the suit of the defendant against the creditors of Mathews, to which the plaintiff was made a party, was for the purpose of obtaining the advice and direction of the court as to certain claims of creditors to priority of payment, and to enable him to distribute the proceeds, and that such action was still pending and undetermined. It appears further in the case, that the defendant, Duryee, still has the fund in his hands undistributed to any of the parties for whose benefit the trust was created.

The age of the plaintiff was admitted on the trial, and also that she had, before the commencement of the suit, and after the death of her husband, demanded from the defendant her dower in the surplus funds, which the defendant had refused to pay. The judge held, as conclusions of law, that she was entitled to dower as claimed, and he determined the amount, and that she was not precluded from maintaining this suit by reason of the failure to appear and answer in the foreclosure suits, or to make a claim under the proceeding to distribute the surplus, and notwithstanding the pendency of the action of the defendant against the creditors of Mathews, to which she was made a party.

I am of opinion that neither of the objections to the maintenance of this suit can be maintained.

I. The foreclosure suits, as well as the proceeding in reference to the surplus, and the suit of the defendant against the creditors, were all pending during the lifetime of the husband, and all but the last terminated prior to his death. In the foreclosure suits the plaintiff's right of dower was in no respect in issue, and formed no subject of adjudication. She had united

in two of the mortgages, and the third was for the purchase money; as against these she had no dower right to assert. Whether she might have a claim in any event, could only be determined after the termination of these suits, and if no surplus remained after the sale, her right would never arise; as matters stood at the commencement, and during the progress of these suits, she had no claim whatever to assert, and she was in truth a merely formal party to the suit, and any judgment rendered therein could in no way pass upon or affect rights which might thereafter arise.

II. The proceeding by which the defendant possessed himself of the surplus moneys is not a bar to this suit. She had no notice of that proceeding save the service of the summons in the foreclosure suits, and that, clearly, was not sufficient at that time; her right was still inchoate, nor was it possible then to determine her interest, even if she had appeared. In that proceeding the defendant was adjudged to be entitled to the surplus only as to those who were properly before the court upon the hearing. There is nothing in the nature of an estoppel to forbid the assertion of the claim now made in this suit. The defendant has parted with nothing, nor has he been induced to take any action by reason of her failure on that occasion to assert any right she may be supposed to have had. He stands as a naked trustee with no personal interest to be affected, no loss to be incurred from any decision that shall be made touching the distribution of the funds in his hands. The creditors have no rights superior to the equity of the plaintiff. She is a dowress, a favorite of the law, and in a position where her rights can be now fully protected and enforced.

III. Neither can it be successfully contended that the suit of the defendant against the creditors of the husband, to which both the plaintiff and her husband are made parties, operates to prevent her from maintaining the present action. The object of that suit, as stated in the answer in this case, and as found by the court, was to enable the defendant to close his trust under the assignment, and obtain the advice of the court as to the order of payment. Why the plaintiff was made a party does not appear, and it is certain that there was no allegation in the complaint in that action in regard to her dower

right in the surplus moneys, and no issue whatever has, or could be raised, whereby that subject could be brought into contestation, or any adjudication whatever rendered to determine her right. While it is true, as a general rule, that where a party to an action can enforce a remedy, but neglects to do so, he cannot resort to a new and independent action to accomplish the same result, yet this rule can only be invoked where the right not only exists, but where there was a full opportunity to assert the right, and ask for the remedy, in an action presenting or affording the opportunity to present the claim, and where an issue is, or can be legitimately framed to try it, and the court has jurisdiction both of the parties and of the subject matter.

The defendant's counsel claims, that, by bringing this action, the plaintiff affirms both the regularity and the binding force of the orders by which the surplus money was paid to the defendant, and that the result would be that she will thus claim the benefit of the orders as against the defendant, and avoid them as respects herself. No such result follows from this action. It does not question the regularity of the orders so far as respects the parties concerned in and bound by them, and, so far as she is affected, there is no necessity for questioning the orders, for the only effect of them has been to bring the money into the hands of the defendant as a trustee for distribution to the parties entitled to share in them, and the object and result of this action is to determine the amount of the plaintiff's interest therein.

It is insisted that the amount found by the judge for the dower interest of the plaintiff was erroneous. The counsel should have shown in what respect it is erroneous. It appears to have been made in conformity with the eighty-fourth rule of the supreme court, and the exception is simply to the finding, without indicating in what respect, if any, the judge erred in the computation. Such an exception, if the judge was right in his general conclusion, presents no legal proposition that this court is called to review.

The demand of dower, before the commencement of the action, was sufficient. It might, indeed, have been made precise and specific, by claiming one-third part of the surplus moneys

Mathews *v.* Duryee

then in the hands of the defendant. But the defendant was not misled by the character of the demand. He knew very well what it was the plaintiff sought, and not only indicated no intention of complying, but, as the case shows, admitted on the trial that he refused to pay the same, or any part thereof.

I am unable to. see that any error was committed upon the trial, or in the judgment rendered, and am accordingly of opinion that it should be affirmed, with costs out of the fund.

A majority of the judges concurred.

WOODRUFF, J. [Dissenting].—I do not think it necessary to determine, on this appeal, the effect of a foreclosure of a mortgage, given by a husband and wife, upon the inchoate right of dower of the wife in the equity of redemption. Conflicting views upon the subject have been expressed.

On the one hand, that as a consequence of the original making and delivery of the mortgage, and one which the parties must have contemplated as the result, if the mortgage debt is not paid, and by force of the power of sale, the surplus of the proceeds remaining after a sale and satisfaction of the decree becomes personal property, and payable to the husband or to those who claim in his right. As to which, see Titus *v.* Neilson, 5 *Johns. Ch.* 452, 457, where Chancellor KENT says this is clear; Bell *v.* Mayor, &c. of N. Y., 10 *Paige*, 49, 55, opinion of Vice Chancellor RUGGLES; Frost *v.* Peacock, 5 *Edw.* 678, 695.

On the other hand, that the inchoate right of the wife to dower attaches to the surplus which, *pro hac vice,* is still to be deemed real estate, and entitles her to claim that such inchoate and contingent right be recognized and protected by a reservation of one-third of such surplus, until it shall be known whether she will survive her husband, and that in case she so survive, she may, as widow, receive the thereafter-accruing income of such one-third during her life.

As to which, see the analogy claimed to exist in case of a sale in partition (Jackson *v.* Edwards, 7 *Paige*, 386, 408, 409), which, however, lacks the argument derivable from the existence of the power of sale by force of the mortgage executed by the wife, or to which the seizure of the husband and all right

III—15

of dower was subject, if purchased subject to the mortgage—and, more directly to the point in question, Denton *v.* Nanny, 8 *Barb.* 618, and Vartie *v.* Underwood, 18 *Id.* 564.

The views expressed in this court in the case of Moore *v.* Mayor, &c. of N. Y., 8 *N. Y.* 110, go very far to sustain the conclusions first above stated. GARDINER, J., says: "In considering whether a wife can, even for public purposes, be deprived of her inchoate right of dower without her consent and without compensation, though a possibility which may be released, it is not, it is believed, the subject of grant or assignment, nor is it in any sense an interest in real estate. It is not of itself property, the value of which can be estimated, but an inchoate right, which, on the happening of certain events, may be consummated so as to entitle the widow to demand and receive a freehold estate in the land, if she survived her husband. . . While living, he, as owner, is entitled to and represents the absolute fee. . . Although the husband cannot deprive the wife of dower by alienating the land during coverture; yet he may forfeit it, as for treason, and she will be concluded. In the case under consideration, the land was taken against the consent of the husband by an act of sovereignty for the public benefit. The only person owning and representing the fee was compensated by being paid its full value; the wife had no interest in the land, and the possibility which she did possess was incapable of being estimated with any degree of accuracy. Under these circumstances the legislature had the power, which I think they rightfully exercised, to direct that the value of the entire fee should be paid to the husband." The opinion of MASON, J., was to the like effect. The unanimous affirmance of the judgment would seem to be an adoption of these views.

Nor is this at all inconsistent with the cases by which it is well settled in this State, that a widow has dower in the equity of redemption of lands under mortgage, and that a foreclosure, though in the lifetime of her husband, will not operate as a bar to such dower; it leaves her contingent right wholly unaffected. The statute gives such foreclosure, and a conveyance thereunder, no greater effect than a conveyance by the mortgagor and mortgagee, and to bar other parties of title subject

to the mortgage, and a conveyance by the husband would not extinguish her inchoate right. See Lewis *v.* Smith, 9 *N. Y.* 502; Mills *v.* Van Vorhies, 20 *Id.* 412.

But without further comment upon the questions stated, I am clearly of opinion that the proceedings in the foreclosure suit touching the surplus moneys are conclusive upon the plaintiff. In respect to any claim to have any portion thereof reserved to await the contingent survivorship, she had her day in court, and by a lawful judicial proceeding in the action, in a court having jurisdiction of the subject and of the parties to the action, it was determined that the defendant was entitled to the surplus moneys, and that determination was carried into execution by the payment of the moneys to him. While the order, then made, remains in force, not modified nor reversed, I think it conclusive, and no action can be sustained to impeach it, by proving that if the plaintiff's rights had been properly represented, the determination would have been different, not alleging any special ground for interposition by an independent suit (if in any case a new suit in the same court can ever be proper for the purpose except as a bill of review).

The statute treating " of the powers and proceedings of the court upon bills for the foreclosure or satisfaction of mortgages" (2 *R. S.* 191, part 3, ch. 1, tit. 2, art. 6), provides that the surplus shall be " brought into court for the use of the defendant, or of the person who may be entitled thereto, subject to the order of the court." § 160. If it be not applied for within three months, it shall be put out at interest . . . for the benefit of the defendant, his representatives or assigns, "to be paid to them by the order of such court." § 160.

By this statute (apart from its necessary jurisdiction over moneys brought into court in due course of proceedings within its jurisdiction), the court have complete jurisdiction of the surplus money, and authority to distribute and pay the same by its order. This was jurisdiction of the subject matter, and authorized the court to prescribe its own manner of proceeding to determine to whom it should be paid, and this was regulated by its rules. By the rules in-force when the order was made touching the disposition of the moneys in question, any party to the suit . . (whether he had appeared or not), was

Mathews *v.* Duryee.

at liberty to institute a summary proceeding to determine to whom the moneys should be paid, and have an order of reference for the purpose, and any party to the suit . . . (whether he had appeared or not), was at liberty to file a notice of his claim if he saw fit to assert any title or right to the surplus moneys or any part thereof. And, therefore, every party who appeared in the action, and every person who had filed such notice, was entitled to notice of the application for the reference, and to attend on the reference, and to notices of subsequent proceedings relative to such surplus. Rule 76 of Supreme Court of 1858 (No 77 of 1870). The report of the referee is to be filed, and if no exceptions are filed, it "shall become absolute and stand in all things confirmed." The order for the payment of the moneys in conformity with the report follows. The proceeding is supplemental to a decree in a suit to which the present plaintiff was a party. It is not claimed that it was not in all respects duly and regularly conducted. The order was one which the court had full authority to make in that proceeding. If the defendant in that suit (Mrs. Mathews) did not appear before the referee and make the claim to have a portion of the moneys reserved to meet the contingency of her surviving her husband, it was not because she had not full opportunity. If she had no notice of the reference, it was because she neglected to appear in the action or to file a notice that she claimed to be entitled to the surplus or some part thereof. If it be said, that, being a married woman, she did not know what was necessary for her own protection, and that her husband neglected her interests in order that his debts might be paid, we can only say, that, while we regret that the dependent condition of a married female, in general very little informed of the best mode of protecting her rights, often exposes her to loss, when those in whom she confides are negligent or unfaithful, the course of judicial proceeding cannot be subverted or its determinations held inoperative, where there is, in truth, no fraud nor other undue advantage taken. A married woman, when duly called into court, must pay attention to the summons,—otherwise there would be no mode of determining rights in any case where a married woman claimed an interest. If fraud be practiced or other undue advantage be taken, there

Mathews *v.* Duryee.

is abundant remedy, and the court which had been thereby induced to make an order to her prejudice, would be prompt to give redress or relief as the case may require.

The question recurs, what is the effect of the adjudication in the proceedings for ascertaining the title to the surplus? And, in considering that, it should be borne in mind that, as a summary proceeding is an action after judgment, it is the subject of appeal to the general term of the supreme court. Such appeals have heretofore been entertained, and I perceive no reason to doubt that a further appeal will lie to this court. See Kirby *v.* Fitzgerald, 31 *N. Y.* 417.

On what ground is it held of no effect as a determination of the title to the surplus?

It is suggested, that, in the foreclosure suit the rights of the defendants *inter sese* were not the subject of litigation. The contingent right of this plaintiff to dower was not and could not be inquired into ; and, as she had no defense to the foreclosure and could not impeach the mortgage, she was not called upon to appear or answer, and her rights have, therefore, " not been passed upon." This seems to me to be the whole question. Whatever proceedings the statute authorized, in the first instance, by way of foreclosure, and next, as supplemental thereto in the order disposing of the surplus, she was, when made a party to the action, called upon to meet, in the manner prescribed by the established practice and rules of the court. A party is taken to know, and must be deemed to know, all the consequences of a due and regular course of proceeding, from the moment he is duly served with process requiring his appearance therein ; and so far as his rights may be affected, he is bound to avail himself of the prescribed and customary modes of protecting those rights. Having an opportunity to appear for that purpose, stands, as to the effect of the proceeding as respects any collateral inquiry into its effect, in the place of actual appearance. To say that the finding of the referee and the order of the court thereupon did not adjudge the defendant to be entitled to the surplus, except as against those who actually appeared before him as parties, would subvert the plainest principles governing the effect of formal judicial inquiry and determination ; and changing the form of

the proposition, by saying that it adjudged the defendant entitled only as against those who were legally before him as parties, only raises the question, who are to be deemed parties for the purposes of the proposition?

The statute, and the established practice and rules of the court, were notice to the plaintiff, from the moment the suit was commenced by service of the summons upon her, that, if she claimed any right to the surplus or any part thereof, she must appear in the action or file notice of her claim; and, in a legal sense, every step in the action and in the proceedings for the disposition of the surplus was taken with that notice in full operation upon the plaintiff.

If the argument urged by the respondent has any force where does it stop?

It is not confined to the peculiar case of the present plaintiff. Judgment creditors, junior incumbrancers, even the husband himself may, on like supposed grounds, neglect to appear in the action, neglect to file any notice that they claim to be entitled to the surplus, and after a reference has been had and the power of the court conferred by the statute has been exercised by an order paying out the money, and such order has been completely executed, they may commence their independent suits against the recipient, and hold all the proceedings a nullity as to any effect upon their title. This is to make the proceedings a farce, and the power of the court to order payment of the money a mere authority to appoint a custodian to hold the surplus in trust for the benefit of whom it may concern.

Such is not the effect of the proceeding.

In what I have said I raise no question of the power of the supreme court to open the inquiry where a default is excused and injustice appears to have been done; or of its power, after the money has been paid according to the order, to compel the recipient to bring it back into court for a just distribution. But so long as that order stands unrevoked, unreversed and in full force, a party to the foreclosure cannot maintain an action to recover the money or any interest therein, against him to whom by such order it has been awarded and to whom it has been paid.

I think the judgment herein must be reversed; but the action being one in which costs are discretionary, and the questions such that the plaintiff had judgment of the supreme court, at special term and in general term, in her favor, the reversal should be without costs.

MASON and GROVER, JJ., concurred with WOODRUFF, J.

Judgment affirmed, with costs.