Bookstaver, J.
On September 24, 1883, Ferdinand Mayer owned individually the equity of redemption in the property sold under foreclosure. At that time he was a member of the firm of F. Mayer & Co., composed of himself and Benjamin Mayer, doing business in the city of Few York.
On that day he and Benjamin Mayer made a general assignment of all their copartnership and individual property, including real and personal estate, for the benefit of creditors.
The original assignee was removed, and finally, Thomas L. James was substituted as assignee, and as such makes claim to these surplus moneys.
In November, 1883, and thereafter, a large number of judgments were recovered, some against Ferdinand Mayer *94 individually, and others against him and Benjamin Mayer, for firm debts.
The plaintiffs in these actions make claims to this surplus, according to their supposed, interest in the same. Some of them insist that it should be applied to the satisfaction of money judgments against Mayer, and against his firm, in the order of their docketing.
Others insist that the application of this surplus should be determined by the order of the commencement of actions in equity based on money judgments, and which have resulted in decrees setting aside as fraudulent and void the assign-, merit made by Mayer and his firm prior to the recovery of the judgments.
Holders of individual judgments against Ferdinand Mayer claim that as the fund arises from his separate property, they should be paid before the judgments of copartnership creditors.
The first of the money judgments recovered were docketed on November 19, 1883, by the Lincoln National Bank against Ferdinand Mayer, individually, for the sum of. $59,627.33, and by Van Valkenburgli & Leavitt against the firm of F. Mayer & Co., for the sums aggregating $54,771.80, the latter being the second judgment in point of time.
Thereafter four judgment creditors’ actions were instituted to have the general assignment before mentioned set aside as fraudulent, and a receiver appointed, viz.: Minzescheimer et al. v. Mayer et al., begun December 19, 1883 ; Swift et al. v. Mayer et al., begun February 26, 1884 ; Dexter et al. v. Mayer et al., begun March 11, 1884, and Bank of North America v. Mayer et al., begun November 20, 1884. All of these actions were based upon judgments obtained after the judgment of the Lincoln National Bank had been docketed. In each, decrees have been entered declaring the assignment fraudulent and void, and in each, Ohanncey Truax, Esq., has been appointed receiver, and has qualified.
The receiver and those whom he represents claim the *95 surplus-moneys, on the ground that a lien was acquired on the real estate in question by the judgment creditors’ actions, and that the lien so obtained is superior to that of all the prior docketed judgments. The Lincoln National Bank claims that its judgment constituted a legal lien upon the • property fraudulently conveyed by Ferdinand Mayer, and should first be paid out of the surplus.
In determining this question, it is well to bear in mind the distinction between real and personal property; when and how the lien of a judgment attaches to each ; and what is the nature of the lien.
As to the lien, it is not in strictness either a jus in rs, nor a jusadremj that is, it is not a property in the thing itself, nor does it create a right of action for the thing ; but constitutes a charge upon the thing.
As between creditors, this charge or lien attaches to personal property at the time an execution on the judgment is issued to the sheriff for service; so that, if the junior judgment creditor issues the first execution, he takes priority, as to personal property, over all senior judgment creditors, and when the sheriff makes an actual levy on the debtor’s goods and chattels, the lien becomes complete against all the world, including a subsequent purchaser in good faith. The issuing of the execution to the sheriff fixes the order of priority, as between creditors, as far as personal property is concerned.
Not so as to the real estate of the debtor. In that case the order of priority is determined by the docketing of the judgment, and the lien attaches at the time of the docketing.
These are fundamental principles, and fix the liens of judgments and executions with mathematical exactness in all cases wdiere the debtor has not made a fraudulent disposition of his property.
But the receiver claims that the assignment in question was voidable only, and not absolutely void, and that it conveyed such a title to the assignee that no judgment lien did or could attach to the property.
*96 On the argument it was practically conceded that if the assignment was void on its face, the lien of the judgments would have attached, but that, being voidable only by reason of fictitious debts, inserted in the schedules, the lien of the judgment could not attach. Is this so? A fraudulent assignment is on the same footing as any other fraudulent conveyance. The statute of frauds declares a conveyance1 made to hinder, delay or defraud creditors, absolutely void as against the creditors defrauded.
Bump on Fraudulent Conveyances (p. 465, 2 ed. p. 474), says : “ The theory of the law is, that a fraudulent transfer passes nothing as against creditors. For all purposes of appropriating the property to the satisfaction of their demand, the property is to be deemed still vested in the debtor. The legal, as well as the equitable title, still remains in him, and creditors who obtain judgment against him afterwards acquire liens upon his property wherever such are given by the law, according to the dates of their respective judgments, in the same "manner, precisely, as if no such transfer had been made.”
White’s Bank v. Farthing (101 N. Y. 344), holds: “ The several judgments became liens on lands fraudulently conveyed by Matilda Farthing, the judgment debtor, in the order of their docketing, and they could have been sold on execution issued on their judgments.”
Underwood v. Sutcliffe (77 N. Y. 58, 62), also holds : “ Property of a debtor transferred by him in fraud of creditors still remains as to them the property of the judgment debtor. If real estate, the lien of the judgment against the debtor attaches to it, and if chattels, they may be seized and sold on the execution ” (See also Chautauque County Bank v. Risley, 19 N. Y. 369 ; Walker v. White, 36 Barb. 592 ; O’Brien v. Browning, 49 How. Pr. 109, 113 ; Erickson v. Quinn, 15 Abb. Pr. N. S. 166 ; Bergen v. Carman, 79 N. Y. 146 ; Becker v. Torrance, 31 Id. 631).
Not onl)r has this doctrine been repeatedly announced in *97 the court of appeals, but it is constantly acted on in the case of fraudulent conveyances.
A judgment creditor issues his execution to the sheriff, who levies upon and sells both real and personal property, covered by such conveyances. If the assignee or vendee commences an action against him or the sheriff for malting such levy and sale, either may defend by attacking the conveyance, and if he succeeds in establishing its fraudulent character, he is justified in making the levy. This can only be upon the ground that the docketing of the judgment gave him a lien upon the real estate, and the levy of the execution a lien upon the personal property.
The fact that the conveyance may be ratified and the fraud waived by one or more creditors, does not, I think, affect its invalidity as against the creditor who attacks the conveyance and shows the fraud. And if he establishes its invalidity, either at law or by proceedings in equity, brought for that purpose only, his legal position is the same, and: the lien of his judgment the same, as though the convéyance had not been made.
I therefore conclude that the Lincoln National Bank had a lien upon the real estate covered by the mortgage, and has upon the surplus arising from the foreclosure of the same, notwithstanding the assignment, unless it has done something to waive that lien, or omitted to do something which renders the lien passive.
The receiver claims that the bank has waived its. lien by commencing an action in equity to set aside the fraudulent assignment.
This action was commenced after those in which the receiver was appointed, and not only prayed that the assignment might be declared fraudulent and void, as to it, but also, like them, that a receiver should be appointed and the property fraudulently conveyed sold. Had this prayer been granted and a decree entered, appointing a receiver and sequestrating the property there can be no doubt, under numerous decisions, that the bank would not only have *98 waived its legal lien, but also that the lien acquired by it under such a decree would have been subordinate to the receiver’s.
But does the mere fact of asking such relief waive the legal lien if not followed by a decree ? The plaintiff in an action cannot obtain greater relief than he asks for, but he may at any timé take less than all he has asked for, provided he has asked for what he takes. In actions of this kind, I apprehend it is what he finally takes that concludes him.
In Erickson v. Quinn (50 N. Y. 697, 699 ; S. C., 15 Abb. Pr. N. S. 106) the plaintiffs, as judgment creditors of' one O’Malley, brought a creditors’ suit and alleged a fraudulent conveyance of certain lands by the judgment debtor to the defendant, and asked for the appointment of a receiver and a sale of the property. After a first trial of the action and pending an appeal, plaintiffs issued an execution upon their judgment against O’Malley, and advertised the property for sale, but did not sell until the judgment in the creditor’s action was reversed, when the property was sold and bought in by plaintiffs. The action was thereafter treated as one to remove obstructions to their judgment, and in this they prevailed. The defendant afterwards moved to set the judgment aside, upon the ground that during the pendency of the action, plaintiffs had sold the property in controversy, and had become the purchasers at sheriff’s sale, bidding the full amount of their judgment and thus satisfying it.
The court held 'that whether plaintiffs had in fact obtained satisfaction, depended upon the validity of the title acquired under sheriff’s deed, and that the judgment in the creditor’s action was necessary to establish that title ; that by it the obstacle to their recovery and the cloud upon their title was removed ; that both proceedings were harmonized, both necessary to give the plaintiffs the relief sought (See also Chautauque Co. Bank v. Risley, 19 N. Y. 369 ; Wakeman v. Grover, 4 Paige, 23 ; Haswell v. Lincks, 87 N. Y. 637; Anderson v. Roberts, 18 Johns. 515; Beck v. Burdett, 1 Paige, 305).
*99 In the case of White’s Bank v. Farthing (101 N. Y. 344) the court of appeals, after referring to the right of the judgment creditor to sell on execution land which had beeri fraudulently conveyed, says: “ The plaintiff, however, elected to bring its action to remove the alleged fraudulent obstruction created by the conveyances. If it succeeds in establishing the fraud, it will be entitled to a judgment setting aside the conveyances simply, in which case it can proceed to enforce its judgment by a sale of the land on execution, unembarrassed by the cloud created, or the court may proceed further and compel the fraudulent grantees to convey the lands to a receiver to be sold to satisfy the plaintiff’s judgment.....If it simply sets aside the fraudulent conveyances, the land will remain charged with the liens of the several judgments in the order of their docketing, and the proceedings to enforce them will be regulated by the statute.”
In the case of the Lincoln National Bank the decree entered simply declared the assignment fraudulent and void, as against the plaintiff and its judgment., and “ that said judgment is a lien on the said real estate of said Ferdinand Mayer and Benjamin Mayer, which they owned at the time of the making and the delivery of the said assignment, the same as if said assignment had not bee® made.” It did not appoint a receiver nor sequester the property, but left the bank to pursue its legal remedies untrammeled by the assignment. In other words, the equitable action was brought in aid of the legal remedy, and I do not think it can be successfully contended that a suit in aid of a legal remedy waives the latter. In such cases, as was said in McElwain v. Willis (9 Wend. 548, 567), “ The aid of chancery is not sought, strictly speaking, for a new process, or to enlarge the functions of the legal process, but to remove some extraneous impediments by which its functions are crippled or deranged.”
Actions in aid of a legal remedy are broadly distinguished from those in which the creditor seeks the creation *100 of a trust fund, out of which his claim may be satisfied, or seeks to satisfy it out of things in action or other equitable assets, -which cannot be reached at law; in the latter, it is well settled by numerous authorities that the creditor waives his legal remedies, and. his lien attaches. as of the time of commencing his suit in equity; but in the former he does not waive his lien—that remains as fixed by law.
I therefore conclude that the bank, by docketing its judgment, acquired a lien on the real estate in question, which has not been waived nor lost by anything it has done subsequently.
The relative position of the claimants is not changed by the fact that the real estate has been sold under foreclosure. The surplus-moneys are to be regarded as’land, and are to be distributed among those who had liens on the land subject to the mortgage, according to their priorities. Their liens are transferred from the land to the surplus (Averill v. Loucks, 6 Barb. 470 ; Purdy v. Doyle, 1 Paige, 558; De La Vergne v. Evertson, 1 Id. 181).
So far, I have treated the referee’s report as though it related to the surplus arising from the sale under foreclosure in the action, in this court, of the N. Y. Life Ins. Co. v. Ferdinand Mayer, only. But the same referee was appointed in similar proceedings in four other foreclosure actions in . .the supreme court, for a like purpose, and his report covers these cases as well. The surplus in these actions also arose from the sale of real estate, the property of Ferdinand Mayer, individually, and the aggregate of this surplus, ■ including that in the action of the N. Y. Life Ins. Co., in this court, is $89,882.27, while the amount due on the Lincoln Bank judgment is $51,538.28 only, so that, after satisfying that judgment in full, there will be left about $38,000 to be distributed among other creditors.
On behalf of Gillis & Geogehan and other judgment creditors of the individual members of the firm of Ferdinand Mayer & Co., it is claimed that the remainder should be distributed among them in preference to the judgment credit *101 ors of the firm, and they rely on the well settled rule in equity that as between the joint and separate creditors of partners, the partnership property is to be first applied to the payment of copartnership debts, and the separate property of the individual partners to the payment of their separate debts ; and that neither class of creditors can claim anything from the fund which belongs primarily to the opposite class, until all the claims of the latter are satisfied.
But this is not an action to marshal the assets of the insolvent estate, nor to determine the claims and priorities as between the separate creditors and copartnership creditors ; or as between them and creditors like Swift & Co., who, by the commencement of equitable actions, have made an equitable levy ; and who have acquired a specific lien on the assigned estate. The proceeding is brought under Buie 64 of General Practice ; and in such a proceeding the referee is “ to ascertain and report the amount due ” the applicant for the surplus moneys, “ or to any other person, which is a lien upon such surplus moneys, and to ascertain the priorities of the several liens thereon.”
If the surplus is charged with legal liens, equity will not interfere with the rules of law regulating its application.
The judgments of Van Valkenburg & Leavitt were docketed on November 19, 1883, long before any money judgments were obtained by the individual creditors of the members of the firm, and long before any proceedings in equity were taken by such creditors to enforce their claims. They have taken precisely the same course as that pursued by the Lincoln Bank, and under Averill v. Loucks (6 Barb. 470, 478); Meech v. Allen (17 N. Y. 300), their judgments for copartnership debts became a lien upon the separate real estate of the partners from the time of the docketing, with the same effect as if such judgments were for the individual debts of the partners.
In the case last cited, the court, after stating the rule contended for by the individual creditors in this matter, says: “ This, however, is a rule with prevails in court of equity in *102 the distribution of equitable assets only. Those courts have never assumed to exercise the power of setting aside, or, in any way, interfering with an absolute right of priority obtained at law. In regard to all such cases the rule is Equitas sequitur legem (1 Story Eq. Jr. § 553).” And the opinion concludes that “ there is no doubt that at law the judgment for a partnership debt attaches and becomes a lien upon the real estate of each of the partners, with the same effect as if such judgment were the separate debt of said partner.”
As the judgments of the Lincoln National Bank, and Van Valkenburgh and Leavitt will much more than exhaust the whole surplus, it is unnecessary now to examine any of the other questions raised upon the appeal, except the claim of Levy Bros. & Co., and of Regina Mayer.
As to the first of these claims, I think the referee has properly disallowed it, for the reasons stated in his opinion.*
The claim of Regina Mayer, wife of Ferdinand Mayer, is for the value of her inchoate right of dower in the surplus arising from the sale under the several mortgages, and this has been allowed by the referee.
The question raised, is not free from doubt. On the part of creditors, it is claimed that, as a consequence of the original making and delivery of the mortgage by her, in which it was provided that the overplus of the purchase money, if any there should be, should be rendered to her husband, his heirs, or assigns, and the sale having taken place according to the terms of the mortgage, the surplus became personal property, and should be paid to him or to those who claim in his right, and this view seems to be sup *103 ported by Titus v. Neilson, 5 Johns. Ch. 453 ; Bell v. The Mayor, &c., 10 Paige, 55; Frost v. Peacock, 4 Edw. Ch. 678; Aikman v. Harsell, 98 N. Y. 186; Moore v. The Mayor, 8 N. Y. 110.
On behalf of the wife, it is claimed that the inchoate right of dower attaches to the surplus, which fro hao vice is still to be deemed real estate, and entitles her to claim her interest therein, under the rule laid down in Jackson v. Edwards (7 Paige, 386, 408), and this contention seems to be supported by Denton v. Nanny, 8 Barb. 618; Mills v. Van Voorhies, 20 N. Y. 412; Simar v. Canaday, 53 N. Y. 298; Douglas v. Douglas, 11 Hun, 406; Mathews v. Duryee, 3 Abb. Ct. App. Dec. 220 ; aff’g 45 Barb, 69; S. C., 17 Abb. Pr. 256.
In the latter case, brought to recover dower in the sur-, plus funds arising from sales under decrees of forclosure, the husband of plaintiff had made a general assignment to the defendant, Duryea, in trust for the benefit of creditors, in which plaintiff did not join. The court was of the opinion : “ That the plaintiff is endowable of the surplus which remained after the payment of the mortgages which had been foreclosed, is too well settled to be questioned (Hawley v. Bradford, 9 Paige, 200; Vartie v. Underwood, 18 Barb. 561) ; nor will her right be affected, whether the sales upon the foreclosure suits took place before or after the death of her husband, for it has been decided in this court that the inchoate right of dower of the wife is as much entitled to protection as the perfected or vested rights of the widow (Mills v. Van Voorhies, 20 N. Y. 412).”
The claim of the wife, I think, is supported by the greater weight- of authority, although I find myself much embarrassed by the provision in the mortgage, that the overplus should be paid to the husband, or those claiming under him.
It is clear that, in such case, if creditors do not intervene and the surplus is paid to the husband, it becomes personal property in his hands, and she can have no dower in it; but *104 it is claimed that it was not paid to him, and that, as between her and the general creditors of her husband, there was no privity of contract, and that the mortgage was only executed by her as a protection for the particular debt secured thereby, and that this object having been accomplished, her interest in the surplus remains the-same as if the mortgage had not been executed.
I am also in great doubt whether such a claim can be entertained in. proceedings of this nature as, I think, in such proceedings, only such claims can be enforced as are vested interests in the lands or liens upon it which have been cut off by foreclosure (Dunning v. Ocean Nat’l Bank, 61 N. Y. 497, 503 ; Mut. Life Ins. Co. v. Truchtnicht, 3 Abb. N. C. 135 ; Mathews v. Duryee, 45 Barb. 69 ; Germ. Savings Bank v. Sharer, 25 Hun, 409 ; Fliess v. Buckley, 22 Hun, 551 554 ; Fleiss v. Buckley, 24 Hun, 515 ; aff’d in 90 N. Y. 291).
But as the parties who, if my opinion is correct, are to receive this surplus* have apparently acquiesced in this part of the report, and as the error of the referee,, if he has made any in regard to this question, can easily be corrected on appeal, after mature deliberation, I will confirm his report in this respect also.
Report confirmed,, with $10 costs.

 Levy Bros. & Co. indorsed Mayor’s notes which were discounted by the Lincoln bank, and having taken up the notes claimed to be subrogated to the lien of the bank upon the surplus. The referee held that Levy Bros. & Co. did not occupy the position of sureties, as the evidence showed that they were not pure accommodation indorsers, but that the notes were given in exchange for Mayer’s notes, a plan adopted for the purpose of raising money for both parties.